## NEGLIGENCE—CHARGE TO JURY, '

[Lucas Circuit Court, February 11, 1899.]

King, Haynes and Parker, JJ.

### L. S. & M. S. Ry. Co. v. Thomas F. Ford, Admr.

`1. QUESTION OF FACT UPON WHICH JURY ARE ENTITLED TO DRAW INFERENCES, NOT REVIEWABLE.

In an action for damages for death caused by negligence, which appears to be peculiarly a question of fact upon which the jury are entitled to draw inferences of negligence of either of the parties: *Held*, that whichever way the jury decide it, a reviewing court is not authorized to disturb their verdict, finding that the defendant was negligent and that the decedent was not negligent in any manner contributing to his injury.

2. COMMENT OF COURT IN REFUSING TO GIVE DEFENDANT'S REQUESTS.

Where defendant's counsel submits to the court certain requests to be given to the jury, and the court gives a part of such requests, and then said that all of the other requests were refused because they did not conform to his views of the law; such comment is not prejudicial to the defendant and does not amount to anything.

3. NOT ERROR IN REFUSING TO GIVE REQUEST WHICH LIMITS THE JURY TO TOO SMALL A NUMBER OF FACTS.

It is not error for a court to refuse a request which limits the right of the jury to pass upon the evidence in the case to too small a number of facts.

KING, J.

The action below was brought by Thomas F. Ford, administrator of Thomas Ford, deceased, who was an employee of the Lake Shore & Michigan Southern Railway company, and who, on the morning of March 4, 1895, about 2 A. M. was killed on the railroad tracks of said defendant. He was employed in the yard as a track repairer·or section man, so called, and on this occasion—which was a very stormy night, snowing and blowing very hard—he was called up about this time to go out in charge as foreman, with another employee, to sweep out th tracks at the switches, so that the rails would properly work whe

required, and he engaged in that work and walked up easterly towards the Lake Shore bridge crossing the Maumee river, had finished his work upon the track where he had been engaged and was returning towards the station on the grounds of defendant company. The Lake Shore company there, as elsewhere, has two main tracks ; one known as the "east-bound" and the other as the "west-bound" track, and outside of the yard, east-bound trains go on the east-bound track—which is north track, and west-bound trains go over the west-bound track—which is the south track. *In* the yard, that rule is not universal, as to switching engines, but it is usual. On the night in question a switching engine was required to assist a freight train going east on the east-bound track, out over across the river and up a short grade some distance east of the river—perhaps a quarter of a mile—at about the time when these men were at their work sweeping out switches. This engine was detached from the rear of the train that it was so assisting and was running back into the yard. Of course in going out it went out upon the east-bound track, as that was the track that the train was on, and the track that the trains usually ran on. The switching engines, ordinarily, however, passed from the east on to the west-bound track immediately after detaching from this train at the cross-over there, but at this particular time that track was blocked by a train standing on the track—and a part of it possibly on the bridge—so that it was required to run west on the east-bound track until it crossed the river. At this end of the bridge there is a cross-over where it might have gone on to the west-bound track and come into the yard, and if required to go onto the east-bound track, it could have passed from that over a cross-over farther down. There was another cross-over three or four hundred feet west of the first one west of the bridge that it could have passed over onto the west-bound track there, as well as farther down. The decedent had completed his work and had started back in company with the man with him and he walked three or four feet ahead of him as they walked back on the east-bound track. They did that, as was testified they would then be passing east-bound trains and could see them and thus had a good deal better opportunity to protect themselves. The walking at that time was better in the tracks than it was anywhere else, and if they walked between the tracks there would be some danger from passing trains. There was a curve or bend there and west-bound trains passing along on the west-bound track at that point would have a slight slant towards the north, and if two trains came along, it would not be safe in a dark night, for men to walk between the tracks. A great many of the men engaged as these men were, walked the track as the living man asserts ; he said they usually did it, and, besides, it was their duty, in daylight at least, to observe as they walked along from one point to another the condition of the rails and of the track, and it is argued that it was their duty on this dark, cold and stormy night. I doubt, however if the evidence on that point showed that at that time they were thus engaged on that duty. It was dark and they had neither of them a lantern and it was snowing and I do not think they were engaged in looking at the track, whatever may have been their duty—I think the evidence shows that.

Now it is claimed by the railway company that the recovery below was contrary to the evidence and the law ; and it was also claimed that the court erred in some comments made upon the request to charge. We will not have time to go over this evidence. We have read it over carefully and we think it makes a fair case to submit to a jury, both as to the negligence of

the defendant and the contributory negligence which is alleged by the plaintiff in error. It may be that the defendant was negligent in not providing a rule providing for the warning of men on the track, it may be that it was negligent in not providing some method by which an engine running as this one was, upon the wrong track, should warn employees that might get upon that track; it might be that it was negligent in running at a too high rate of speed under the circumstances under which it was running—six or seven miles an hour, it was said, for it was a dark night and the engineer testified that he could not see more than thirty feet ahead of the engine if he looked. It was a dark and stormy night, and there was some evidence to show that the cab was closed, that there was no window open and there is some doubt whether they were looking at all. They ran over this man and did not know of it until they were hallooed at. They did not see either of the men. The first man had just jumped off the track and barely escaped; the other man, two or three feet ahead, did not see or hear the engine and was run over and killed. All those things are possible acts of negligence of the defendant and were proper to submit to a jury under the circumstances. The fact that this engine was running upon the wrong track, should be taken into consideration in determining whethey the decedent was negligent; also the customary manner of doing the work. We think all those facts should go to the jury. This case is peculiarly a question of fact upon which the jury were entitled to draw inferences of negligence, or not, and, whichever way they decided it, if the case was properly tried, we do not see how a reviewing court could reverse it. We think we are authorized to say this by the decisions of the courts in cases somewhat similar. Some of these cases are found in 90 Wis., 215, 220 and 221; Railway Co. v. Murphy, admr., 50 O. S., 135, 142; 74 Fed. Rep., 285; Railroad Co. v. Margrat, 51 O. S., 130, 139, 140 and others. We think on the question of negligence of either of the parties it is a case peculiarly for the jury and that we are not authorized to disturb their verdict finding that the defendant was negligent and that the decedent was not negligent in any manner contributing to his injury.

At the close of the testimony both counsel submitted written requests to be given to the jury before argument. The defendant below submitted a series of eight requests. The court gave the first seven of the series and refused to give the eighth. The court then said that all of the other requests were refused. This was after he had read all of the requests of both parties that he intended to give. He added that they were refused because they did not conform to his views of the law. It is said now that that comment was such as the statute does not authorize. We do not see very much force in the argument. We do not think the language of the court complained of amounts to anything; it certainly could not prejudice the defendant below, and the only question left is, whether the court should have given the eighth request. We have read it over and we think that the eighth request limits the jury; it recites certain facts and says if the jury find those they must find for the defendant. We think it limits the right of the jury to pass upon the evidence in the case to too small a number of facts: there are other questions in the case than were embodied in the request. The court refused it for the reason that it did not make the exception, as that, if they found that the facts existed embodied in the request, and did not find, or failed to find that the defendant by its agents and servants by the exercise of ordinary care after they had discovered that the decedent by

his negligence was in danger of being run over, could not have avoided injuring him—in other words, that it was their duty after they found that he had put himself in a place of danger, even if the plaintiff was negligent, it was their duty to avoid injuring him if by the exercise of reasonable care they could, which is a well known rule of law; but we. think that the substance of the request was improper and that the court properly refused it. There was no other exception to the charge and: both parties expressed themselves satisfied with the charge; we think. that the charge was fair, and the jury having passed upon the facts, we: decline to disturb the verdict.

*Potter & Emery*, for plaintiff in error.

*Hurd, Brumback & Thatcher*, for defendant in error.