Portance vs. Lehigh Valley Coal Co.

BARDEEN, J., took no part.


PORTANCE, Appellant, vs. LEHIGH VALLEY COAL COMPANY, Respondent.

*December 20, 1898 — January 10, 1899.*

(1–3) *Master and servant: Precautions against danger: Injury from sudden starting of machinery: Negligence of person employed to give warning: Fellow-servants: Assumption of risks.* (4) *Practice: Change in decision after its announcement.*

1. If a master has properly selected and instructed a competent man to give warning to his other employees of the movements of machinery involving danger to them, such as apparatus for unloading coal from a vessel, he will not be responsible for an injury to one of said

employees caused by a negligent failure of such man to give the warning. *Promer v. M., L. S. & W. R. Co.* 90 Wis. 215, limited.

2. An employee by whom the machinery used in unloading coal from a vessel was set in motion and stopped, and one employed to stand at the hatch and give warning of the starting of such machinery to others engaged in said work in the hold of the vessel, were fellow-servants of such others, where all were under common direction and command, with no right of control one over the other.

3. An employee of ten years' experience in the handling of coal, and who had for several months worked for the same master under the same conditions and regulations as at the time of the injury, must be held to have assumed the risk of the lack of any precautionary regulations prescribed by the master.

4. It was not error for the court, after announcing "Nonsuit granted," to withdraw that decision and direct a verdict, the noon recess only having intervened, and the jury not having been discharged nor the situation of the parties changed.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

In August, 1896, the defendant was operating an extensive coal dock at the city of Superior, and the plaintiff was employed as a part of the gang unloading coal from a vessel. He had been employed on coal boats for about ten years, and at this work for defendant three or four months. The dock was equipped with much machinery, all operated by one engine, which was continuously in motion, operating, amongst other things, a shaft from which were moved drums to operate the buckets and scrapers used in unloading the vessel. The method of unloading was the lowering into the hold of the vessel of buckets, called clam shells, which were seized by men in the hold of the vessel, and moved about so as to grasp a quantity of coal, and, when filled, were lifted and swung onto the dock. These buckets were raised and lowered by a man on the dock, known as the hoister, who, by means of a lever, caused a drum to revolve and wind up or unwind the rope holding the buckets. In the hold there was also a device, called a scraper, which was dragged back

and forth to scrape coal up to the hatches. It was moved by a rope from the dock, running through a pulley or block in the hold; and this rope was moved by means of a similar drum on the dock, set in motion or stopped by an employee on the dock, called the scraper-man, by means of a lever connecting it with the shaft above mentioned. Besides the hoister and scraper-man above mentioned were a number of men, including the plaintiff, employed in unloading the ves- sel, all under the general direction and command of a fore- man named Gill, who directed all similar work, and employed and discharged men. Amongst these employees was one specially designated as a rigger, whose special province it was to put in place the tackle, ropes, and other apparatus when a vessel was to be unladen, and to keep watch of them, and adjust them from time to time, with the aid of such of the others as he might call to his assistance. There was also amongst these employees on the vessel a man known as the hatch-man, whose duty it was to stand at a hatch and communicate between the men in the hold and the hoister and scraper-man, who might not be in their sight. It was his duty to ascertain when the buckets were ready to be hoisted, and signal the hoister, and to give signals with reference to the lowering of the buckets; also to communi- cate signals to the scraper-man whether to move or stop his machinery, and in what direction to move the scraper, which was out of his sight in the hold. It was also the duty of this hatch-man to notify the men in the hold of anything endangering them. When the rigger found it necessary to make any changes in the ropes or appliances aboard the ves- sel, it was for him to give the signal to the scraper-man on the dock to stop his drum; and the instructions to the scraper- man were positive not to start again until he received a signal from some of the men, which might come from the rigger himself, or from those working with him, or be trans- mitted by the hatch-man.

Portance vs. Lehigh Valley Coal Co.

On the occasion in question, the machinery had been stopped at the order of the rigger, who was attempting to raise a large block or pulley through which the scraper rope ran, to aid in accomplishing which the plaintiff was lifting on the block. While so lifting, and without any signal so to do from any one, so far as appears, the scraper rope suddenly started, and plaintiff's hand was drawn into the block and injured. It was in evidence that the machinery never had started except by the scraper-man moving his lever. One of plaintiff's witnesses testified that the scraper-man started up the machinery at the time plaintiff got hurt. No notice was given to the plaintiff that the machinery was about to start.

At the close of the evidence, the defendant moved for direction of verdict in its favor. The jury were excused until 2 o'clock p. m. After argument the court announced, "The court grants a nonsuit." Exception was taken by plaintiff. The court then took a recess until 2 o'clock p. m. The record discloses the following: "2 p. m. In open court. Trial resumed. Jury present. Court orders nonsuit to be set aside which was granted. Exception. Court directs a verdict in favor of the defendant. Plaintiff excepts." Thereupon the jury rendered a verdict in favor of the defendant. Plaintiff, on the same day, moved to set aside the verdict and for a new trial, on the grounds, amongst others, that it was error to direct a verdict after granting a nonsuit and dismissing the case, and for the reason that such verdict was against the evidence. Plaintiff appeals from judgment entered on the verdict.

For the appellant there was a brief by *Alexander Athey* and *O'Brien & Vaughn,* and oral argument by *P. H. O'Brien.* They argued, *inter alia,* that the duty of the person employed to give warning of danger was the duty which the master owed to his employees, and he was responsible for its nonperformance. *Promer v. M., L. S. & W. R. Co.* 90 Wis. 220;

*McElligott v. Randolph*, 61 Conn. 157; *Michael v. Roanoke M. Works*, 90 Va. 492; *Erickson v. St. P. & D. R. Co.* 41 Minn. 500; *Anderson v. Northern M. Co.* 42 id. 424; *Hartvig v. N. P. L. Co.* 19 Oreg. 522; *Gerrish v. New Haven I. Co.* 63 Conn. 9; *Belleville S. Co. v. Mooney*, 39 L. R. A. 834; *Molaske v. Ohio C. Co.* 86 Wis. 220. It was error for the court to grant a nonsuit. But, having done so, it was error to withdraw it and direct a verdict. Entering a nonsuit discharged the jury.

For the respondent there was a brief by *Ross, Dwyer & Hanitch*, and oral argument by *W. D. Dwyer*.

DODGE, J. 1. The duty of a master to his servant is definite and clear. It is to provide him reasonably safe and proper tools, implements, and apparatus with which to work, reasonably competent and careful co-employees, and a reasonably safe place to work. These duties being performed, the result of any accident must be borne by the servant. If he would seek to make the master liable, he must prove an omission or failure in some one of these three respects. The question therefore is whether the evidence in this case,— given all the weight to which in any respect it can be entitled,— did establish any such failure.

There is no claim or suggestion that the machinery or apparatus was defective either in character or repair. There is no suggestion that any of the co-employees were lacking in that character for skill and caution which is required, nor of any lack of care in the defendant or its representative in their selection. It is, however, strenuously argued that there was a failure in the defendant's duty to make the place of labor safe, in that notice or warning of the starting of the scraper machinery was not given to the plaintiff. The contention of the plaintiff below, and his principal contention in this court, was that the master, recognizing the necessity of providing for such warning as an element of

safety of place, had employed a man, known as a hatch-tender, for the purpose and with the duty, amongst others, of giving the warning, and whom it thereby constituted its representative or agent to perform the duty of giving warning for it, and that such hatch-tender failed to perform his said duty. He argues that this was a delegation to the hatch-man of a duty resting on the master, and, therefore, that the former's negligence is imputable to the latter.

This position involves a confusion of ideas. It is undoubtedly true that, when the employment is in its nature perilous, it is the duty of the master to provide reasonable and necessary precautions and safeguards against such perils, and that no delegation of that duty can relieve him from responsibility for failure to perform it. If injury to employees is to be apprehended from starting of machinery, or from passage of cars, as in *Promer v. M., L. S. & W. R. Co.* 90 Wis. 215, and that danger can be avoided by reasonable precautions in the way of warning or otherwise, it may well be the duty of the master to make provision and give direction for such precautions; but, when he does so, he fulfills his duty. If reasonable care would require that a co-employee be provided to give warning, it would be necessary for the master to provide one; but, if he properly selected and instructed a competent man for that purpose, he would no more be responsible for a failure of the warning through negligence of such servant than he would for the results of the negligence in performance of any other duty by a co-employee. That is one of the risks assumed by the other servants. *Dahlke v. Illinois S. Co.* 100 Wis. 431.

This was the full scope of the decision of this court in *Promer v. M., L. S. & W. R. Co.*, *supra.* The only point there decided was that the question should have been submitted whether the company had prescribed sufficient regulations to guard against injuries to its employees from moving about cars in its yards. *Smith v. C., M. & St. P. R. Co.*

91 Wis. 503, 505. If there is anything in the opinion in that case which can be construed as holding that, after due and sufficient regulation providing for precautions by a fellow-servant, his negligence could impose liability on the employer, such construction is contrary to the well-settled law of this state, and not intended in that case.

The rule on this subject is well expressed and illustrated in *Hartwig v. N. P. L. Co.* 19 Oreg. 522: "As it is the duty of the master to furnish a reasonably safe place for his servant to work, it became the duty of the defendant company to provide such reasonable rule or regulation in the conduct of the business as would protect the men while engaged in their work at the foot of the chute. It required the defendant not simply to employ skilful and competent agents and employees in its service, but to adopt rules and regulations adapted to the dangerous nature of the business, so as to guard against accidents; in a word, to be vigilant in the use of means, and in the adoption of measures, to make the servants reasonably safe in their employment. To this extent the master assumes the risks, while the servant assumes the natural and ordinary risks incident to the business in which he is engaged, including those arising from the negligence of his fellow-servants."

The rule here announced does not at all infringe the other well-settled doctrine that in providing the safe place to work, as in building a scaffold or putting in place timbers to which tackle is to be attached (*Jarnek v. Manitowoc C. & D. Co.* 97 Wis. 537), the duty of the master is satisfied only by actual performance, whether he does the work with his own hands or through servants, even though the latter may also afterwards work with the plaintiff in the service, depending on the safety of such preliminary structures or appliances. See *Cadden v. Am. S. B. Co.* 88 Wis. 409, 417; *Smith v. C., M. & St. P. R. Co.* 42 Wis. 520, 526.

In this case there is absolutely no evidence of any lack of

Portance vs. Lehigh Valley Coal Co.

precautionary regulations prescribed by the defendant; although, if such contention were made, it would be rendered immaterial by the fact, fully apparent, that the conditions were all the usual ones, and the defendant, a man of ten years' experience in such service, had worked under them from the spring until August, and must be held to have assumed any risk therefrom. The injury in this case resulted, so far as the evidence goes, from the negligence of the scraper-man in starting his machinery without signal from the rigger, with whom plaintiff was working. If, as plaintiff contends, it also resulted from the omission of the hatch-man to give warning, no liability of the defendant results, for the hatch-man, as also the scraper-man, were clearly fellow-servants with plaintiff, all engaged in the common undertaking of unloading the coal from the same boat, and under common direction and command, with no right of control one over the other. *Prybilski v. N. W. C. R. Co.* 98 Wis. 413; *Foley v. The Peninsular,* 79 Fed. Rep. 972; *Luebke v. C., M. & St. P. R. Co.* 63 Wis. 91; *Ocean S. S. Co. v. Cheeney,* 86 Ga. 278. It should be noted in passing, however, that much which is said as to the giving of notice by the hatch-man as a protection to the plaintiff is misleading and confusing. If, as appears to be established by plaintiff's evidence, the scraper-man started his machinery without a signal, no hatch-man, however vigilant, could give any effective warning. The pressing of the lever by the scraper-man, and the starting of the rope, to the injury of plaintiff, were necessarily instantaneous. No observation by the man at the hatch could be communicated to the man in the hold so quickly as the motion was communicated to the rope. No matter what duties the hatch-man may have had to give warning of danger, they could have no application to a danger like this, the effect of which, in the nature of things, was as instantaneous as his earliest possible discovery of it.

2. Error is alleged because the court, upon motion to di-

Portance vs. Lehigh Valley Coal Co.

rect a verdict for defendant, first announced, "Nonsuit granted," and then withdrew that decision and directed a verdict. This was done practically at once, before any change in the situation of the parties had taken place, and before the jury had been discharged. True, the noon recess had intervened, but nothing else. We can see no error in this. Surely, a moment for *locus pœnitentiæ* must be allowed courts. It certainly cannot be held that the moment a judge announces a conclusion he is at once foreclosed from any further consideration. Nothing is more common than for counsel to suggest impropriety of some order or decision when announced, and for the judge to modify it. It would have been entirely competent for the court, after announcing the granting of nonsuit, to have changed his mind, either on a reason suggested by counsel or one occurring to himself, and to have then submitted the case to the jury.

3. Numerous exceptions to exclusion of questions on cross-examination have been pressed upon our attention as errors. We have examined them all carefully, and, while in one or two instances the restrictions on plaintiff's cross-examination were somewhat severe, we do not think the discretion of the superior court was abused. Most of the excluded questions related to matters already fully covered by the cross-examinations. Others merely inquired whether the witness had already testified to certain facts. Still others were so worded that a direct answer would be capable of misconstruction. A question to Anderson, the hatch-man, as to whether he could have seen a signal if given, might have been permitted, but its exclusion could not prejudice plaintiff. He had testified that he saw none, and, if his failure was due to his negligence, that could not promote plaintiff's case.

We discover no prejudicial error, and no evidence tending to prove negligence of defendant.

*By the Court.*— Judgment affirmed.

BARDEEN, J., took no part.