WISKIE, Appellant, vs. THE MONTELLO GRANITE COMPANY, Respondent.

*September 9 — October 15, 1901.*

*Master and servant: Fellow-servants: Negligence.*

1. Whether or not employees of the same master are fellow-servants, so that the master is not responsible for an injury to one caused by the negligence of another, does not depend upon the grade or rank of the servants but upon the nature of the service being performed by them in which the negligence occurs.

2. A foreman who personally conducts the blasting in a quarry is a fellow-servant of those who assist him in such work, and one of the latter cannot recover for injuries caused by the unexpected explosion, beneath the rock upon which he was at work, of powder which the foreman had negligently permitted to remain there after the partial explosion of a blast. *McMahon v. Ida M. Co.* 95 Wis. 308, distinguished.

APPEAL from a judgment of the circuit court for Marquette county: LAWRENCE W. HALSEY, Judge. *Affirmed.*

This is an action to recover damages for personal injuries sustained by the plaintiff December 17, 1900, while in the employ of the defendant in its granite quarry, by reason of the unexpected explosion of a powder blast beneath a rock on which he was at work at the time. Issue being joined and trial had, the court, at the close of the testimony on the part of the plaintiff, granted a nonsuit, and from the judgment entered thereon the plaintiff appeals.

The plaintiff testified to the following effect: He was thirty-six years of age. He had worked for the defendant

three years, most of the time drilling holes in the rock with steam or air drills. He was so at work Friday, December 14, 1900, when Pender, the defendant's foreman, told him to bar some stone loose, and put chains on them, and get them ready for the derrick. Two other workmen (C. and G.) were working on another stone glutting it,— raising it up from the bottom, and driving it off from the main body of the rock. Gluts are made of iron or steel, and of different sizes,— from one to two inches in diameter; and they run to a point,— wedge shaped. To glut stone out, the men drill the stone out and crack it. Then Pender had C. and G. put gluts in and glut it out; one to glut from the top, and the other from the bottom. They had glutted from the bottom, and raised the stone an inch and a half. The stone was eight or nine feet long, five or six feet across, and six or seven feet thick. The seam was eight or nine feet long, six or seven feet deep, and half an inch wide. Late in the afternoon of Friday, Pender stopped C. and G. from glutting, and told them that they could not get the stone out in that way; that he would get it out for them. Pender went after the powder, and sent plaintiff for a lump of clay. When they returned, Pender went to pouring the powder from a tin can, holding about a pint, into the seam or crack, and continued until he had emptied four cans into it, and then told plaintiff to get the kerosene, that the powder was running away. Plaintiff got the kerosene, and Pender took the can and poured it into the crack. He then poured another can of powder into the crack, and some more kerosene, and followed it by two more cans of powder. Then it filled clear to the top with powder, and Pender then put in his fuse, and sent plaintiff for dirt. Plaintiff brought a shovel of moist sand, and Pender put it on the top of the powder. Pender then packed the dirt with his hands all along the top of the crack, and told C. and G. to get some wood to put on top, and told plaintiff to take the tools away from

the front of the blast. After those things were done as so directed, Pender ordered the men out of the hole, and then Pender gave the signal to blow the horn, to let people know there was going to be a blast. The crack into which the powder was so put extended from the top to the bottom of the rock, and was one half inch wide clear down to the bottom. When the signal was so given, C. and G. and Pender and plaintiff came down to the corner twelve or thirteen rods away from the blast. When the blast exploded, plaintiff was looking down the street, paying no attention, and did not hear the report. Pender first called out "All over!" which meant that the blast had gone off. When they returned to the hole, Pender told plaintiff to bar and chain stone again, and told C. and G. that they would "have to cut that stone again," and with his chalk and line Pender marked where they were to cut the stone. The two ends of the stone were free, and the side against the rock was separated from it about half an inch. That was the width of the crack. C. and G. drilled across the stone from the seam to the front of the stone, and while they were doing that plaintiff continued getting out stone with a crowbar, and chaining them, until the bell rang and they all quit for the night. The next morning (Saturday) Pender said, "We won't work to-day; it looks like a bad day;" and so plaintiff went home, and did not return until Monday morning, December 17, 1900. Pender then said that C. was not coming out that morning, and that plaintiff should help drill that line which Pender had marked on Friday. Plaintiff then went to work on that line and on the stone they had been glutting out. The holes were drilled about two inches deep, and three or four inches apart. The wedges were put in and the stone broken by G. The stone was drilled from the free end. The piece drilled off was four feet long. After the stone was broken, Pender told plaintiff to take the strike hammer and go and drive the gluts where C. had

been drilling on Friday. The powder had been poured in right near those gluts,— poured down from the top of the stone. Plaintiff took the strike hammer, and went there to drive on the gluts, while G. was driving on the side. While so driving the explosion went off and made plaintiff totally blind. Plaintiff then heard Pender say, "Oh, God! I supposed that the rain soaked the powder out." When the blast so went off Pender was about four feet away from plaintiff. The explosion was loud. The powder came right from the top where plaintiff was driving the gluts. G. and he were striking at about the same time; he on the top, and G. on the side. After the explosion G. led him away to the doctor's office, and it was about seven weeks before he could see, and during the time he suffered a great deal of pain. He was hired by Pender, and received $1.75 per day. Pender ordered the men about in the quarry. No one else had anything to do ordering the men in the quarry. Pender attended to the placing of the blasts and putting in the powder at all times. Plaintiff never handled the powder, and did not know anything about placing blasts. He did not know anything about there being powder in there when the blast went off the second time. Pender did not do any glutting, and did no glutting on this rock.

On cross-examination the plaintiff testified in effect as follows: He had been employed by the former owners of this same quarry, and had so worked for them eleven or twelve years, and had been working in this quarry altogether for about fourteen years. During that time he had been doing general work, covering everything, except handling powder — blasting. Pender was the foreman under such former owners. They had used seam blasting in the quarry ever since plaintiff first started to work there, and Pender handled the powder during all that time. It was usual for Pender to have somebody get sand, dirt, powder, and oil for him. He would call for it. This rock was

drilled first and cracked. It very often happened that a rock was drilled and cracked, and then a seam blast put in to blow it out. That had been done on rock on which he was drilling. Whatever Pender called for, plaintiff would get. He never knew of an occasion before when a blast failed to move the rock. This was the first time he ever saw that occur. At the time of the explosion Pender was giving orders. Just before, he was doing nothing. Plaintiff's work on Friday was ten or twelve feet from the rock. On Monday he examined the rock to see the position of the gluts, and he was sure they were not put in after the blast on Friday, but were put in before the first blast, and remained there. He saw them after the first blast, but did not examine the seam to see whether it was wider before than after that blast. It seemed to be about half an inch wide, as before. He did not use the steam drill Monday morning because Pender ordered him to use the hand hammer. He had attempted to glut off rocks as large as that before. It looked to him as though the bottom of the rock was flat,— but he could not see under it, and did not look. He had seen Pender pour kerosene oil into a seam blast before, but did not know how many times. He did not know whether it was a usual blast in comparison with blasts he had seen Pender put in before, nor whether the powder was larger or smaller grain. The powder was black fine powder. There was blasting in the quarry two, three, or four times a week; sometimes two, three, or four times a day. He saw smoke at such times, but paid no attention to it. From what he saw and what occurred on Friday, he thought the powder had all exploded, and it did not occur to him that there might be some powder unexploded. He supposed the blast had gone off, from the smoke.

Such is a general outline of the circumstances under which the plaintiff was injured, as detailed by himself. Some of his testimony was corroborated by three other workmen in

the same quarry. There were also two expert witnesses on the part of the plaintiff whose testimony tended to prove that the seam blast, as prepared or charged by Pender on Friday, was improper; that the usual and customary way, and in fact the only proper way, is first to make a base for the powder by pouring sand into the crack or seam so as to confine the powder to certain limits, and then put in the powder, so that the explosion will ignite all the powder; but that, in case the explosion is only partial, then more sand should be poured into the seam, so as to cover up the powder in there and make a new base for the second charge of powder to be exploded, and that it is dangerous to drill or glut the rock until after all the powder which had been put in had been exploded; that the soaking of powder by a common rain will not entirely destroy the explosive effect of powder, as it is glazed over with graphite so as to resist the water, although the water would in time destroy such effect.

For the appellant there was a brief by *Fowler & Mc-Namara,* and oral argument by *C. A. Fowler.*

For the respondent there was a brief by *Turner, Pease & Turner,* and oral argument by *L. S. Pease.*

CASSODAY, C. J. The gist of the complaint is that the defendant negligently failed to furnish to the plaintiff a reasonably safe place in which to work, and to keep and maintain the same in a reasonably safe condition. This is made more plain by the allegations therein to the effect that Pender improperly prepared the blast; that he knew, or ought to have known, that it had not wholly exploded on Friday; that that made it his duty to renew the blast, as stated in the expert testimony; that he negligently failed to do so, and then negligently and carelessly set the plaintiff to work on the rock on Monday to remove and separate the same from the main body by glutting, as indicated in

the testimony.   In other words, the negligence complained of is the negligence of Pender, who, with the assistance of the plaintiff, prepared the blast on Friday.   Pender and the plaintiff had together worked in that quarry for fourteen years prior to the accident.   During that time Pender had had charge of the men, and personally conducted the blasting.   In doing so he was assisted by others, including the plaintiff.   Such blasting occurred two, three, or four times a week, and sometimes two, three, or four times a day. Never before the occasion in question had a blast failed to fully explode.   There is no pretense of any negligence on the part of the defendant, except in what Pender so did and so omitted to do on the occasion in question.   The question recurs whether the plaintiff can recover from the defendant by reason of such negligence on the part of Pender.

The defendant contends that there can be no recovery, by reason of the fact that the plaintiff and Pender were co-employees in the work of such blasting.   The plaintiff contends that they were not co-employees.   All must agree that at common law the master is not responsible for injury to a servant caused wholly by the negligence of a fellow-servant.   Courts differ. widely, however, as to who constitute such fellow-servants.   In this state, and most of the other states, it is firmly settled that it does not depend upon the grade or rank of the servant whose negligence caused the injury, but upon the nature of the service being performed by them and in which the negligence occurs.   *Dwyer v. Am. Exp. Co.* 82 Wis. 307; and cases there cited; *Kliegel v. Weisel & V. Mfg. Co.* 84 Wis. 148; *Stutz v. Armour,* 84 Wis. 623; *Hartford v. N. P. R. Co.* 91 Wis. 374, 379; *Prybilski v. N. W. C. R. Co.* 98 Wis. 413; *Dahlke v. Illinois S. Co.* 100 Wis. 431; *Portance v. Lehigh Valley C. Co.* 101 Wis. 574; *Adams v. Snow,* 106 Wis. 152; *Mielke v. C. & N. W. R. Co.* 103 Wis. 1, 5, 6; *Liermann v. Milwaukee D. D. Co.* 110 Wis. 599.   For earlier

cases in this court see *Toner v. C., M. & St. P. R. Co.* 69 Wis. 197, 198. The rule stated is mentioned in a standard work as the "approved doctrine," and the authorities cited from most of the states and the English courts justify the statement. 12 Am. & Eng. Ency. of Law (2d ed.), 933–942. The supreme court of the United States has repeatedly affirmed the rule mentioned, especially during the last few years. *Baltimore & O. R. Co. v. Baugh,* 149 U. S. 368, 379–390; *Central R. Co. v. Keegan,* 160 U. S. 259; *Northern Pacific R. Co. v. Peterson,* 162 U. S. 346; *Northern Pacific R. Co. v. Charless,* 162 U. S. 359; *Martin v. A., T. & S. F. R. Co.* 166 U. S. 399; *New England R. Co. v. Conroy,* 175 U. S. 323. See, also, *Stevens v. Chamberlain,* 51 L. R. A. 513, and note. These cases overrule *Chicago, M. & St. P. R. Co. v. Ross,* 112 U. S. 377, and disapprove the rule in force in Ohio and some other states. In most of the cases cited the foreman or manager of the work was the person guilty of the negligence complained of. Thus the supreme court of the United States has expressly held that:

"A common day laborer in the employ of a railroad company, who, while working for the company, under the order and direction of a section boss or foreman, on a culvert on the line of the company's road, received an injury by and through the negligence of the conductor and of the engineer in moving and operating a passenger train upon the company's road, is a fellow-servant with such engineer and such conductor in such a sense as exempts the railroad company from liability for the injury so inflicted." *Northern Pacific R. Co. v. Hambly,* 154 U. S. 349, 355, 356.

In that case Mr. Justice BROWN, speaking for the court, states the rule as indicated, and cites cases in support of it from fifteen states, including Wisconsin. He also cites cases holding the contrary doctrine. That case is quite similar in its facts and ruling to *Cooper v. M. & P. du C. R. Co.* 23 Wis. 668, and *Toner v. C., M. & St. P. R. Co.* 69 Wis. 197–199. So. in a more recent case the supreme court of the United States has held that:

"Where the business of a mining corporation is under the control of a general manager, and is divided into three departments, of which the mining department is one, each with a superintendent under the general manager, and in the mining department are several gangs of workmen, the foreman of one of these gangs, whether he has or has not authority to engage and discharge the men under him, is a fellow-servant with them; and the corporation is not liable to one of them for an injury caused by the foreman's negligence in managing the machinery or in giving orders to the men." *Alaska M. Co. v. Whelan*, 168 U. S. 86.

Counsel cite *Promer v. M., L. S. & W. R. Co.* 90 Wis. 215, in support of their contention that the defendant is responsible for the negligence of Pender. But that case has recently been limited to the proper selection and instruction of a sufficient number of competent servants to properly do the work. *Portance v. Lehigh Valley C. Co.* 101 Wis. 579. Counsel insist that this case is ruled by *McMahon v. Ida M. Co.* 95 Wis. 308. In our judgment, that case is clearly distinguishable from the case at bar. In the statement of the case it is said:

"The gist of the complaint is that the plaintiff was set to work by a shift boss in a certain part of the mine where there were concealed unexploded blasts known to the shift boss, but not to the plaintiff; and that plaintiff, in ignorance of the danger, while drilling and preparing for a blast, was injured by the explosion of one of the concealed blasts."

It is further stated, in effect, that the shift boss, Thomas Cadden, testified that July 1, 1894, he loaded six holes in the forehead of a certain drift with dynamite, and endeavored to explode the same by electricity; that there were three holes that had wires sticking out of them after the blast had been fired; that no further work was done at that place in the mine until July 17, 1894, at which time the shift boss placed the plaintiff and one Hugh Cadden at work at the forehead in question. McMahon himself testified that he commenced work in the mine June 19, 1894; that he first worked back towards the shaft from the forehead, the further

Wiskie vs. The Montello Granite Co.

end of the diggings,— from the west to the east, between the shaft and the forehead; that he worked at that place near the shaft about two weeks; that after that they moved down about 100 feet away, and worked there probably a week, and July 17th they started to work up in the forehead,— right at the forehead; that there had not been anybody working in that forehead just before for a while,— not for a couple of weeks, he should judge. That was the place where the explosion occurred which injured McMahon. It is very obvious that McMahon was not at work at that place July 1st, when the partial explosion took place, nor at any time until he was put at work there by the shift boss, July 17, 1894; and consequently he was put in a new place to work, which the shift boss knew to be dangerous, but of which he was ignorant. The admitted facts in the case at bar are very different.

We must hold that the plaintiff in this case was a fellow-servant with the foreman, and hence that the defendant is not responsible for the negligence of Pender. Besides, the plaintiff and Pender had worked together in the quarry for fourteen years in the same kind of service, and having the same relation to each other, and hence we must hold that the plaintiff assumed the risk. This view is supported by the authorities cited. See, also, *Paule v. Florence M. Co.* 80 Wis. 350; *Showalter v. Fairbanks, M. & Co.* 88 Wis. 381; *Dougherty v. West Superior I. & S. Co.* 88 Wis. 343; *Mielke v. C. & N. W. R. Co.* 103 Wis. 1.

*By the Court.*— The judgment of the circuit court is affirmed.