RANKEL, Appellant, vs. BUCKSTAFF-EDWARDS COMPANY,
Respondent.

*February 19—March 9, 1909.*

*Master and servant: Injury to servant: Independent contractor: Neg-
ligence of fellow-servant: Care in selection: Who are fellow-
servants: Assumption of risk: Duty to warn servant of dangers.*

1. One H. was employed by defendant at a certain compensation per
   day to procure the necessary workmen and attend to the con-
   struction of a mill, defendant to furnish all materials and to
   pay, through H., the men hired by the latter.  Defendant exer-
   cised a control over the undertaking to the extent of directing
   its progress, course of procedure, and general management.
   *Held,* that H. was not an independent contractor, and that the
   workmen were employees of defendant.
2. A master is not liable for injuries to a servant caused by negli-
   gence of a fellow-servant, if he used reasonable care in selecting
   the fellow-servant for the work in question, acting upon such
   information as to his skill and competency as ordinarily pru-
   dent men act upon under the same or similar circumstances.

3. The evidence in this case is *held* to show that defendant was not negligent in the selection of a servant to break up with dynamite the frozen ground where a mill was to be built.

4. One employed for the special work of breaking up with dynamite the frozen ground where a mill was to be erected was not a fellow-servant of a workman engaged in excavating the earth who, beyond assisting in driving the holes in which the charges of dynamite were placed, took no part in the separate and distinct operation of blasting; and the common master is liable to such workman for injuries resulting from negligence of the blaster. *Wiskie v. Montello G. Co.* 111 Wis. 443, distinguished. MARSHALL, J., dissents.

5. The workman in such a case who, after the blaster had pronounced the place safe for continuing the work of digging, was injured by striking with his pick an unexploded charge of dynamite, is *held* not to have been informed of or to have had reason to apprehend the particular danger, so as to be chargeable with assumption of the risk.

6. It is the duty of a master using hazardous agencies in the conduct of his business to warn his servants, not informed on the subject, of the extraordinary risks attending such use.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

This is an action for the recovery of damages for personal injuries alleged to be due to the negligence of the defendant.

The defendant conducts a manufacturing plant for the production of chairs, caskets, etc. In 1907 it was determined to add a sawmill to the defendant's plant. The mill was to be built upon a marshy ground into which spiles were to be driven as a foundation for the structure. The construction of the sawmill required the removal of certain old structures as well as the building of the new one. The defendant company negotiated with one Heidlinger for the removal of the old structures and the construction of the new mill. Heidlinger stated that he could not figure upon the work and undertake it because it involved the destruction of the old and the construction of the new structures, and they arranged that Heidlinger was to receive $5 per day for his time and services. He was to procure whatever workmen might be needed,

keep account of their time and their wages, present defendant with a statement showing the amount of money needed to pay the wages of such workmen, receive this amount with his own wages from the defendant, and therefrom pay the men. All the materials to be used in the construction were to be furnished by the defendant. Heidlinger prepared the plans for the mill. The work was started in the early part of the year, when the surface of the ground was frozen to the depth of about two feet. It was necessary to remove the frozen earth in order to be able to drive the spiles for the foundation. Heidlinger procured laborers to excavate and remove the frozen earth, among them the plaintiff. For a few days they worked with crowbars, picks, and shovels. To expedite the work Heidlinger consulted with an officer of the defendant and suggested that the frozen earth might be removed more rapidly and easily if it were broken with dynamite. The officer desired to send for dynamite, but Heidlinger stated that he did not know anything about dynamite and how to set and explode it. He was then directed to consult the owner of a stone quarry outside the city of Oshkosh in order to procure a competent man to do the blasting. Heidlinger consulted the owner of the quarry, and on his recommendation engaged a man in his employ, one Spanbauer, to do the blasting. Spanbauer had worked for the owner of the quarry for five or six years at breaking stone. He had observed the way in which blasting was done at the quarry and had done some blasting there.

Preparatory to the blasting of the frozen earth the workmen engaged in breaking up the ground drove an iron bar into the ground with a sledge hammer. When the iron had been driven into the ground to the desired depth the bar was withdrawn and the workmen retired and took no part in the blasting operation. Spanbauer was the only man at work on the grounds of the defendant who had had any experience with dynamite, and when the hole had been made he charged it by placing the dynamite in the hole, placing the exploding

cap on it, making the necessary electrical connections, filling the hole with earth and tamping it down, and he then exploded the charge. Several charges of dynamite were exploded at the same time by having a series of charged holes connected with the one electrical instrument used to discharge the exploding caps. Four charged holes were connected for the last blast made by Spanbauer. About one of the holes the earth was not thrown up as about the other three, and Spanbauer then again connected the wires from this hole with his electrical apparatus and ran a current through the wires. No explosion followed, and Spanbauer made an examination of the ground in the vicinity of the hole and saw a crack about one and one-half feet from the hole. He attributed the crack to the supposed explosion of the charge in the hole, and told the men to proceed with the digging, that everything was all right. Subsequently plaintiff while working in this vicinity struck the unexploded charge of dynamite with a pick, and by the ensuing explosion lost the sight of both his eyes and suffered other injuries.

There was evidence in the case that a careful workman, with a knowledge of how to blast in frozen ground, in case of doubt as to whether or not a charge had been exploded, with a wooden spoon would carefully remove the earth which had been tamped into the hole and thus assure himself that the charge had been exploded. When several charges of dynamite are discharged by the same electrical discharge the several explosions occur simultaneously, and it is impossible to tell from the sound whether all have been exploded.

At the conclusion of the plaintiff's evidence the court refused to grant a nonsuit, but at the conclusion of the defendant's testimony the court directed a verdict for the defendant on the ground that the plaintiff was not in the employ of the defendant at the time of the injury and because the plaintiff was a fellow-servant of the blaster, Spanbauer. This is an appeal from the judgment on the verdict as directed.

For the appellant there were briefs by *Eaton & Eaton*, at-

᭸torneys, and *H. B. Jackson,* of counsel, and oral argument by *M. H. Eaton* and *H. B. Jackson.* To the point that Spanbauer and the plaintiff were not fellow-servants, they cited, among other cases, *Schultz v. C., M. & St. P. R. Co.* 48 Wis. 375, 379; *Grams v. C. Reiss C. Co.* 125 Wis. 1; *Smith v. C., M. & St. P. R. Co.* 42 Wis. 520; *Promer v. M., L. S. & W. R. Co.* 90 Wis. 215; *Cadden v. Am. S. B. Co.* 88 Wis. 409; *McMahon v. Ida M. Co.* 95 Wis. 308; *North Chicago R. M. Co. v. Johnson,* 114 Ill. 57; *Salmons v. N. & W. R. Co.* 162 Fed. 722.

For the respondent there was a brief by *Williams & Williams,* attorneys, and *Barbers & Beglinger,* of counsel, and oral argument by *G. E. Williams, Fred Beglinger,* and *Charles Barber.* They cited, besides other cases, *Wiskie v. Montello G. Co.* 111 Wis. 443; *Okonski v. Pa. & O. F. Co.* 114 Wis. 448; *Hamann v. Milwaukee B. Co.* 127 Wis. 550; *Gereg v. Milwaukee G. L. Co.* 128 Wis. 35; *Dahlke v. Ill. S. Co.* 100 Wis. 431; *Peschel v. C., M. & St. P. R. Co.* 62 Wis. 338; *Williams v. North Wis. L. Co.* 124 Wis. 328; *Alaska M. Co. v. Whelan,* 168 U. S. 86; *Petaja v. Aurora I. M. Co.* 106 Mich. 463.

Siebecker, J. The plaintiff challenges the correctness of the trial court's ruling as to all the questions involved in directing a verdict for the defendant. We will examine them as presented.

The first contention is that the plaintiff was in the employ of the defendant as its servant at the time of the accident. This is denied by the defendant, and it asserts that he was in the employ of one Heidlinger, who, it claims, had contracted to erect the mill for the defendant. The facts adduced establish that Heidlinger was employed by the defendant to attend to the construction of the mill, the defendant to pay him a compensation at the rate of $5 per day for the time he was so engaged. It also appears that the defendant was to fur-

nish all the materials for the structure and for the prepara-
tion of the grounds, and that it was to pay the daily wages
of all the men needed in erecting the structure. The men
were hired by Heidlinger, and he took account of their time
and presented it to the defendant's officers, received the
amounts due him for wages and due the men whom he had
engaged, and paid them, retaining out of the sum so paid him
by the defendant the amount due him as compensation for
his time at the rate agreed upon by him and the defendant.
It is also shown that the defendant's officers exercised a con-
trol over the undertaking to the extent of directing its prog-
ress, course of procedure, and general management. The
evidence does not establish that defendant and Heidlinger
agreed that Heidlinger was to have the right to control the
erection of the structure and was to be responsible for the cost
of the work and the wages of the men employed. It is mani-
fest that the defendant was responsible to all persons engaged
on the job, and that Heidlinger merely acted as its agent in
securing their services. Under these circumstances it can-
not be said that Heidlinger had contracted with defendant to
erect the mill according to his own method and without be-
ing subject to the control of the defendant except as to the re-
sult of the work. Upon the evidence it must be held that
the plaintiff was in defendant's employ at the time of the ac-
cident. From the foregoing conclusion it follows that Span-
bauer was in defendant's employ when he was conducting the
operation of blasting the earth at the mill site.

We are persuaded that the defendant exercised reasonable
care in selecting Spanbauer as one competent to do the blast-
ing. Whether or not Spanbauer proved to be competent to
perform this highly dangerous service does not determine this
question. The inquiry is: Did the defendant act upon such
information respecting Spanbauer's skill and competency in
this regard as that upon which ordinarily prudent men will
act under the same or similar circumstances? If so, it ful-

filled its measure of duty to its other servants in the selection of employees. It is shown that Heidlinger apprised the defendant's officer in charge of the construction that he had not the knowledge and skill to set the loads of dynamite and explode them. Thereupon he was directed by defendant to obtain for this purpose a competent blaster from among the men engaged in this service in a neighboring quarry. Pursuant to this direction Heidlinger applied to the person operating the quarry, and was informed that Spanbauer was engaged at the quarry and understood the business. It is manifest that the officers of the defendant and Heidlinger knew that persons were engaged in blasting in the quarry, and understood from the representations of the person operating that Spanbauer had performed this service and was skilled in it. Their conduct in this respect was that of reasonable and careful men and acquits them of the charge of negligence in this respect.

It is insisted by respondent that, if the plaintiff was in defendant's employ in performing the service at which he was injured, then defendant is not liable therefor, because it was caused by the negligence of Spanbauer, who was a fellow-servant of the plaintiff in the work of blasting. The trial court held this contention of the defendant to be sustained by the facts of the case under the ruling in *Wiskie v. Montello G. Co.* 111 Wis. 443, 87 N. W. 461. In the *Wiskie Case* the plaintiff, while assisting the foreman of the quarry in conducting the blasting, was injured through the unexpected explosion of part of a powder blast which the foreman had negligently permitted to remain and near which he had set the plaintiff at work. The facts of the case show that Wiskie and the foreman had jointly placed the blast, that they worked together under the foreman's direction at raising and blasting rocks, and that they had been so engaged for a long time before the accident. It was held upon these facts that Wiskie and the foreman were engaged in a common service

of blasting rocks when Wiskie was injured. From an examination of the facts in that case it is manifest that Wiskie and the foreman were jointly performing the same task and were engaged in a common service; but we do not find a like state of facts in the instant case. Here the defendant had employed the plaintiff to help remove the earth for the foundation of the mill. · The defendant in the course of the prosecution of such work decided to employ a blaster to break the frozen ground so as to expedite the work. Spanbauer was engaged for this purpose and was employed at this special work for two days. The work was conducted as follows: Plaintiff and the other workmen at the excavation drove holes with iron bars into the earth for setting dynamite charges in. Spanbauer then took charge of the work. He placed the dynamite charges in the holes, packed them with earth, connected them by wire with an electric battery, and discharged them by turning on the electric current. Neither the plaintiff nor the other workmen took part in setting and packing in the charges or in connecting them by wire with the battery or in discharging them. All of this was under the control of and was performed by Spanbauer in the capacity of blaster. From this it appears that the setting and exploding of the blast was exclusively intrusted to the expert and that plaintiff took no part in performing this service. It is obvious from the dangerous character of this service that it was treated as separate and distinct from the service plaintiff and the other workmen were performing in excavating the earth for the foundation of the mill. In the *Wiskie Case* the plaintiff assisted the expert in performing the work of blasting. In the instant case the plaintiff did not assist or engage in the work of blasting, and herein the two cases are widely distinguished. In the former the plaintiff and expert were engaged in the common service of blasting. In the latter the plaintiff and the expert were engaged in separate and distinct services, which were different in nature and in the hazards and dan-

gers incident thereto.    True, they both served a common master and occupied the same place while performing their respective duties, but the operation of blasting was wholly different, distinct, and independent of the employment of the excavator engaged in the construction of the mill.    The risks and dangers of blasting are not ordinarily incident to the service plaintiff was performing.    These features and conditions of the instant case clearly differentiate it from the *Wiskie Case*.    Upon these considerations the ruling of the trial court that plaintiff and Spanbauer were fellow-servants cannot be approved.    The case must be treated from the standpoint that plaintiff was the servant of the defendant and was not engaged in the operation of blasting with Spanbauer, who acted alone for the defendant in using and handling highly explosive and dangerous agencies for blasting the earth.    *Cadden v. Am. S. B. Co.* 88 Wis. 409, 60 N. W. 800.

Nor can the plaintiff be treated as one informed of the dangers which are incident to the want of a proper conduct of the blasting operation.    The nature of plaintiff's work and his relation to the blasting did not inform him of the unsafe condition of the place where he was directed to proceed with the work of excavating after Spanbauer had exploded the blast and had pronounced the place safe for continuing the work of excavating.    While the plaintiff knew that an explosive was being used by Spanbauer to expedite the work, he was not informed of the particular danger to him from a failure to discharge part of the dynamite charges.    He had no reason to apprehend that an undischarged load was hidden in the earth where he was put to work.    He was in fact led to believe by the expert that the place was safe.

It does not appear that plaintiff was instructed or warned of the extraordinary hazards and dangers incident to the use of dynamite, and he cannot be held to have assumed the risks thereof as dangers ordinarily incident to his employment.    It devolves on the master, who finds it necessary and expedient

to use hazardous agencies in the conduct of his business, to inform his servants, not informed on the subject, of the extraordinary risks and dangers attending their use, in order that they may avoid them by refusing to continue in the service, or may otherwise protect themselves against them. The evidence in the case bearing on the question of defendant's negligence was such as to present questions for solution by a jury, and it was error to direct a verdict for the defendant.

*By the Court.*—Judgment reversed, and the cause remanded to the trial court for a new trial.

MARSHALL, J. (*dissenting*). In my opinion this case is clearly ruled in favor of respondent by *Wiskie v. Montello G. Co.* 111 Wis. 443, 87 N. W. 461, and the principle there referred to exempting the master from the consequences to one servant from the negligence of his fellow-servant. The trial judge doubtless supposed, as well in my opinion he might, that there was no fair way of distinguishing the two cases or escaping the effect of the principle.

The logic indulged in, by my brethren, has support in some jurisdictions, but was repudiated by this court at quite an early day, and such repudiation has been uniformly adhered to.

I will say, in passing, that I have not the slightest idea the court now intends to adopt the doctrine which its opinion, as it seems, will be regarded as promulgating. At some future time the apparent departure from the long-traveled road will be corrected.

This case goes upon the theory that employment in a general enterprise may be, or, to put it stronger, is necessarily, divided up into different tasks, services, or departments, according to character, grade, and degree of danger, and that, in the law of negligence, fellowship in one branch of a general employment does not extend to those employed in the other.

How wide the doctrine stated is from the rule prevailing

in this state, which is so familiar that it hardly need be stated, must be apparent at once.

Neither grade of work, particularity of group, within a broad general class of employees in a particular proprietor's business, nor degree of danger, nor rank of employment, is the test of fellowship between servants, in the law of negligence. The sole test is whether the persons concerned are employed in the same general enterprise to accomplish the same general purpose by the same master under the same general control, regardless of whether they are, at the particular time, engaged in the same branch of the work or not. *Toner v. C., M. & St. P. R. Co.* 69 Wis. 188, 198, 31 N. W. 104, 33 N. W. 433.

A station agent employed in a widely different branch of the business of operating a railroad from a train crew, the latter from a track crew, and that one from the roundhouse crew, all being in the common employment of operating the railroad, the engineer on the locomotive and the most humble trainman, the trackman wielding his shovel, the station agent, the most common workman moving freight about the depot, are fellow-servants. *Toner v. C., M. & St. P. R. Co., supra; Cooper v. M. & P. du C. R. Co.* 23 Wis. 668; *Howland v. M., L. S. & W. R. Co.* 54 Wis. 226, 230, 11 N. W. 529; *Pease v. C. & N. W. R. Co.* 61 Wis. 163, 20 N. W. 908; *Peschel v. C., M. & St. P. R. Co.* 62 Wis. 338, 349, 21 N. W. 269; *Albrecht v. C. & N. W. R. Co.* 108 Wis. 530, 84 N. W. 88, 53 L. R. A. 653; *MacCarthy v. Whitcomb,* 110 Wis. 113, 85 N. W. 707. Those cases amply illustrate all I have said. All these are held fellow-servants: A shoveler in a gravel pit and a train conductor. *Naylor v. C. & N. W. R. Co.* 53 Wis. 661, 11 N. W. 24. A snow shoveler and a member of a train crew. *Howland v. M., L. S. & W. R. Co., supra.* The foreman and men engaged under him, whom he has full power to direct. *Peschel v. C., M. & St. P. R. Co., supra.* The track-repair crew and the members of a crew on a passing train.

*Toner v. C., M. & St. P. R. Co., supra.* The train crew on one train with the train crew on another. *MacCarthy v. Whitcomb, supra.* The men who load coal on locomotive tenders and the track walker injured by coal dropping from the tender. *Schultz v. C. & N. W. R. Co.* 67 Wis. 616, 31 N. W. 321.

Perhaps as striking an illustration as any case that can be cited is *Cooper v. M. & P. du C. R. Co., supra.* It has been many, many times approved. The person injured, as said in *Heine v. C. & N. W. R. Co.* 58 Wis. 525, 17 N. W. 420, was engaged in a branch of the service not in any way connected with that in which the negligent employee causing the injury was engaged. The particular work of the one had no connection whatever with the particular work of the other, except the two services were in departments of the general business of operating the railroad.

It seems useless to pursue the matter further. Here, at the best for appellant, he was engaged in one branch and the blaster in another of the general business of a common employment of preparing the ground for the foundation of a mill. They came much nearer being engaged in the same particular work, if that was a legitimate test, than the injured and the injurer in any of the cases referred to.

The idea that an industrial operation under an employer is subject to be divided into specific tasks or departments according to kind of work, whether of common or expert character, so as to make corresponding divisions as to fellowship, has no support in our jurisprudence.

Let it be conceded, for the purposes of the case, that the specific work of doing the blasting was delegated wholly to Spanbauer, while the work of making the holes for him to place the dynamite in and of excavating after the blasts were discharged was delegated to others, including appellant. Concede if we may, as my brethren say, that the two kinds of work were widely different, one being of a common and the

other of an expert character. Also concede, for now, that the particular service of one was distinct from that of the other and that they were different in nature and hazards and dangers. If those features, under the rule prevailing here, suggest want of fellowship, I do not understand the rule.

True, say my brethren, "they [Spanbauer and appellant] both served a common master and occupied the same place while performing their respective duties, but they were engaged in independent employments in the construction of the mill." That is, as I understand it, they were engaged in different tasks of the general work of construction. That concession, within all our cases, instead of indicating want of fellowship indicates right the contrary, as I understand our decisions.

As the opinion goes: 'Plaintiff was the servant of defendant and was not engaged in the operation of blasting with Spanbauer, who, . . . alone, was the blaster,' thus suggesting, as before indicated, that a general employment is divisible into numerous special tasks as to fellowships. Where there is warrant for that suggestion I do not know.

I think the ruling of the learned trial court was right and the judgment should be affirmed.