Promer vs. Milwaukee, Lake Shore & Western R. Co.

PROMER, Appellant, vs. MILWAUKEE, LAKE SHORE & WEST-
ERN RAILWAY COMPANY, Respondent.

*April 5 — April 23, 1895.*

(1) *Master and servant: Precautions to prevent injury: Assumption of
risk.* (2, 3) *Railroads: Injury to employee: "Kicking" car at night:
Negligence: Contributory negligence: Court and jury: Fellow-serv-
ants.*

1. It is the duty of an employer to exercise reasonable care and cau-
tion to protect his employees from avoidable dangers; and an em-
ployee, by accepting and entering on the employment, does not
assume the risk consequent upon a failure of the employer to per-
form such duty.

2. Plaintiff, while working at night on the repair force in defendant's
yard, was struck and injured by a rapidly moving detached car
which had been kicked by a switch engine upon the main track
without any person or light on its front end to give warning of
its approach. Upon the evidence — tending to show, among other
things, that the point at which the car was kicked upon the track
could not be seen from the place where plaintiff had been at work;
that he had just started to leave that place and was walking be-
side the track with his back to the car; and that he did not see it
or hear anything to indicate its approach — it is *held* that the ques-
tions of negligence and contributory negligence were for the jury.

3. Negligence of an employee who had been directed by defendant's
yard foreman to accompany the car, in riding on the rear in-
stead of the front end thereof, so that he could give no warning
of its approach, is to be imputed to defendant, as a failure to per-
form a duty which it owed the plaintiff.

APPEAL from a judgment of the circuit court for Outa-
gamie county: JOHN GOODLAND, Circuit Judge. *Reversed.*

This action was brought by the plaintiff, one of the em-
ployees of the defendant company on its night repair force
at the city of Kaukauna, to recover damages sustained in
consequence of an injury received by him in the yard of
the company at said city while engaged in his work, alleged
to have been caused by the defendant's negligence, on the
morning of December 24, 1891, while it was yet very dark.

The negligence alleged was that the defendant company, at the time mentioned, caused to be kicked and moved through said yard a single passenger car in a careless and negligent manner and at an unlawful and unreasonably dangerous rate of speed, namely, at the rate of fifteen miles an hour, without any warning, caution, or signal to the plaintiff, who was there engaged in his duties and entirely unaware of the approach or presence of such car, and without any means employed or offer made to control or regulate or signal its approach; that in consequence of the curvature of the track near the point where the plaintiff was struck, and the presence of freight cars on adjoining tracks, and certain buildings near by, and by reason of the darkness of the night and the failure to give any signal or warning, the plaintiff was unable to perceive or know of the approach of the car; that the defendant failed and neglected to use due care and caution in the movement of said car, and have an engine attached thereto, and give the plaintiff notice of its approach; that while so engaged and in the exercise of due care he was, in consequence of defendant's negligence, struck and run over by said car so being kicked and moved through said yard, whereby his right leg was crushed and he sustained other serious injuries. The answer was, in substance, that the plaintiff's injuries occurred while he was walking along one of the defendant's railroad tracks in said yard, and without fault or negligence on its part; and the material allegations of the complaint were denied.

At the trial the evidence tended to show that the tracks of the defendant company passed through the city of Kaukauna in an east and west direction, curving somewhat to the south, and that there is a street across the yard in a north and south direction; that the plaintiff was struck by a passenger coach moving on No. 1 or old main track in an easterly direction towards the passenger depot; that it was dark, not yet sunrise, and the plaintiff, with one Van Al-

stine, was working in the yard of the company in car repairing, as one of the night crew; that the track next south of the old main track was filled with freight cars, and the tracks were so close that when both were filled with cars a man walking between the tracks would almost touch his shoulders on each side; that they had finished some work on the second track, and had picked up their tools, and had just started to go to another depot to do some work; that they could not see the switch from where they were at work.

Van Alstine testified that he was walking at the time next to the freight cars, and the plaintiff was on the left side of him; that the first thing he noticed was a sweep of wind by his ear from the coach running by; that it struck the plaintiff, and dragged him about seventy-five or one hundred feet, and passed right on; that the injury sustained was a broken foot; that there was a man on the hind end of the car leaning over the railing at the end with a lantern, looking back, but no one on the front end, and that he did not see the coach before it struck the plaintiff; that he thought it was going about eight miles an hour; that the point where the plaintiff was struck was 105 paces from the switch that let said coach on said main track; that after he picked the plaintiff up he went back to the switch engine; found the engine near the switch; that they were kicking in or putting back other cars on the canal track; that he knew where the engine was, and heard it working there; "if the engine is working full and heavy, you can hear it all over the yard; we go around the yards so much it got to be an every-day sound to us;" that he found the engineer, named Daly, and called attention to the fact that a man was hurt. "The yard foreman, John Blake, came right back with me. The plaintiff was walking a little ahead of me when he was struck. Both of us were standing side by side. I don't know if he was walking between the rails or outside. Don't know if he was at my side or a little behind."

Plaintiff testified: "I think I walked between the two tracks,— the main track and No. 1. Van Alstine was close behind me or right behind me when I was struck. The car knocked me down. I didn't know whether it was a freight car or a coach, at first. It broke one of my ribs; crushed my big toe off the left foot also. At the time of the injury it was dark. I didn't know what car was coming. I couldn't hear it. I didn't hear it make any noise. Freight trains came in on that main track. The switching was done on other tracks. The other tracks had freight trains on them all the time; cars standing. The main track was kept clear, and cars were sent through on it." He testified, further, that his hearing was good enough to hear 200 feet, if an engine was in the yard; that he did not walk inside the rail, because he picked up the tools between the two tracks; that there was room enough between the two tracks for himself and partner to go, one walking behind the other, but not alongside of each other; that Van Alstine was walking behind him; that he was listening for trains, but did not know whether he heard that or not; that when he picked up his tools he did not know whether he looked towards the switch or not; had probably walked two steps; that it was too dark to see the car when it came down; that they often worked on the old main track and all over the yard at night-time, and there was a switch engine in the yard right along; that he did not know at any time before he was struck that they were about to switch a coach down that track, and he did not at any time while he worked in the yard see a coach kicked along this track as this one was, without an engine being on it, or without a brakeman on the front platform with a light, and that he did not see that car until it struck him; that there were five or six tracks parallel with this track.

John Blake testified that he held the position of foreman on the switch engine in the yard at the time of the accident;

that he remembered the car he put on that track; took it
to the old main switch that is next to the canal track, and
desired to place the car on the old main track. " We kicked
that coach from this switch,— the old main-track switch, on
the canal. We kicked it with the engine on the track.
That was the track on which the plaintiff was injured. I
did not follow that car over this main track, not over two
car lengths. I don't think my engine went over the switch.
It is not necessary to have it do it. By kicking a car is
meant we give it a start with our engine, get it in motion,
stop our engine, and let it go. In kicking that car in that
day, I pulled it up over this old main-track switch. I said
to my man, ' Cut that car off, and ride it down. I will set
this baggage car back.' "

At the close of the plaintiff's testimony the defendant
moved for a nonsuit on the ground that the allegations of
negligence had not been proved, and that the testimony of
the plaintiff proved contributory negligence. The court
granted the motion, and judgment was entered accordingly,
from which the plaintiff appealed.

For the appellant there was a brief by *Wigman & Martin*,
and oral argument by *P. H. Martin*.

For the respondent there was a brief by *Fish & Cary*,
and oral argument by *A. L. Cary*.

PINNEY, J. 1. There is, no doubt, a considerable degree
of danger attending the service in which the plaintiff was
engaged as one of the night repair force in the defendant's
yard, where trains were frequently arriving and departing,
and cars, singly or in number, were continually being shunted
or driven back or forth on the various tracks, or switched
from one to another; and there can be no doubt but that
the dangers which are unavoidable, in the exercise by the
company of reasonable care and precaution in guarding its
employees against such perils, are assumed by them in con-

senting to accept employment under such circumstances.
But the employee does not assume the risk of those dangers
which are known by, and can be obviated or avoided by the
exercise of reasonable care and caution on the part of,
the company. The company is bound to take reasonable
care and caution to protect those working in its yards from
such dangers, and it would be liable for damages sustained
by any employee in consequence of its neglect or failure to
discharge its duty in that regard. The duty is one arising
from the relation of master and servant, and the servant
has a right to assume, until he has knowledge to the con-
trary, that the master has taken and will adopt such reason-
able measures as are within his power to protect him against
such dangers while engaged in his work. In whatever man-
ner the company may choose to discharge its duty, it still
continues, though it be delegated to one or more of its offi-
cers or servants, and it cannot by reason of such delegation
claim exemption from liability for injuries occasioned by its
nonperformance. The master is required to furnish the
servant with proper and suitable tools and instruments for
his use, and a safe and proper place in which to perform his
work, and while requiring the performance of work by a
servant in a place which may be or has become dangerous,
and such danger may be foreseen and guarded against by
the exercise of reasonable care and prudence on the part of
the master, it is his duty to exercise such care and adopt
such precautions as will protect the servant from avoidable
danger; that is to say, such as may be avoided by the exer-
cise of reasonable care and caution on the part of the master.
*Bessex v. C. & N. W. R. Co.* 45 Wis. 481, 482; *Kelleher
v. M. & N. R. Co.* 80 Wis. 584, 588; *Smith v. C., M. & St.
P. R. Co.* 42 Wis. 520; *Laning v. N. Y. C. R. Co.* 49 N. Y.
531, 532; *Corcoran v. Holbrook,* 59 N. Y. 517; *McGovern v.
Cent. Vt. R. Co.* 123 N. Y. 280, 287, 288; *Moore v. W., St. L.
& P. R. Co.* 21 Am. & Eng. R. Cas. 509.

The conditions and circumstances under which the plaintiff was required to perform his service in the yard, as well as its dangers, and what reasonable care and caution the company could and ought to have observed in shunting, kicking, or moving cars, particularly in the night-time, when the plaintiff had to perform his work, was, we must assume, well known to its foreman, Blake, who, it appears, was on the engine and in charge of its work, and directed the passenger coach to be kicked down the main track, by reason of which the plaintiff was injured. The evidence does not show how far the coach had been driven before it came upon the main track where the engine let go of the coach by the direction of Blake, about 300 feet distant from where it struck the plaintiff. The evidence tends to show that it came on the main track somewhat from the south and on a curve, and that the switch could not be seen from where the plaintiff had been working, and, although a man with a lantern was on the rear of the car, there was no one nor any light on the front of the car, and no locomotive was attached to it, to admonish employees of its comparatively noiseless approach and the danger that might ensue. The manner in which the car was thus left to run its course, as to employees in the yard, was, in a very considerable degree, attended by the perils and risk consequent upon making a running switch,— a proceeding usually considered as a negligent act, and attended with great danger (*Ward v. C., St. P., M. & O. R. Co.* 85 Wis. 601, and cases cited); and if made across a frequented street in the night-time, without providing any signal of danger or giving any notice of the approach of the rear section, is held to be negligence as a matter of law (*Delaware, L. & W. R. Co. v. Converse,* 139 U. S. 469).

The evidence tends to show that, by the adoption of reasonable precautions within its power, the company could have given the plaintiff timely warning of the danger to which he was exposed, and thus guarded him against the

Promer vs. Milwaukee, Lake Shore & Western R. Co.

injury he sustained, and that it failed to discharge its duty to him in this respect. The presence of a brakeman with a light on the front of the car, or of an engine attached to it, to give warning by sound as well as by light, and to regulate its speed or reverse its course, are among the expedients that might have been reasonably adopted. So far as we can discover, no such or similar measure was adopted, and the company or its representative, the foreman, in driving the coach along the main track in the manner and under the circumstances stated, practically ignored the presence of the plaintiff and others of the night crew at work in the yard, and took no measure whatever to protect him against the dangers to which he was thus exposed.

We think, too, that there was sufficient evidence of the defendant's positive negligence to require the submission of the case to the jury, independent of its alleged neglect of duty. It appears the foreman directed an employee of the company, when the coach was kicked and cut off, to ride it down along the track, and it is said that this employee negligently discharged the duty devolved on him, by riding on the rear instead of the front of the car, and so that the injury may be said to have been the result of the negligence of a fellow-servant of the plaintiff, for which there can be no recovery. The act charged as negligent was, as we have said, the act of Blake, the foreman in the yard at the time, and acting, it would seem, as engineer; and if he was a fellow-servant of the plaintiff the defendant company would, notwithstanding, be liable, under the provisions of the statute (S. & B. Ann. Stats. sec. 1816a), for the consequences of his negligence. Evidently the riding of cars in the night-time by a brakeman or employee on the front end with a lantern, may serve to signal the approach of the car or cars and regulate or stay their course by means of the brake, and operates as a precaution calculated to prevent accident and injury to the workmen in the yard. It may properly

be considered as a reasonable precaution and measure of safety which it was the duty of the company to take for that purpose, and in that view the servant of the company riding the coach in the present case was charged by the company, through its foreman, with the duty the company owed the plaintiff and others, its employees at work in the yard. He was the agent of the company for the performance of that duty, and his failure to properly perform it is to be imputed to the company, and its liability for nonperformance of its duty would still remain. *Smith v. C., M. & St. P. R. Co.* 42 Wis. 526, and cases cited; *Laning v. N. Y. C. R. Co.* 49 N. Y. 521; *Cadden v. Am. S. B. Co.* 88 Wis. 418, 419; *McGovern v. Cent. Vt. R. Co.* 123 N. Y. 288.

We think it was a question of fact for the jury to determine from the evidence whether working at night by the plaintiff in the defendant's yard was attended with danger not fairly incident to his employment, and which could have been foreseen and guarded against by the defendant by the exercise of reasonable care and prudence, and whether the plaintiff's injury was caused by its neglect to adopt such reasonable precautions as were necessary to protect the plaintiff from such danger.

2. The risk consequent upon the failure of the company to properly discharge its duty to the plaintiff, as its employee, is not one of the ordinary risks incident to his employment, and the plaintiff did not assume the consequences of it by accepting and entering upon his work. But if the negligence of the company, or element of danger, though not incident to his employment, was open and obvious, or such that the servant, in the exercise of ordinary care, ought to have observed it and comprehended the danger likely to result, then he assumed the risk if he continued in the employment. There is no evidence tending to show that the plaintiff, by continuing in his employment, assumed the risk

of injury from the defendant's failure to properly perform any of its duties to him as its employee.

3. The testimony of the plaintiff and his companion, Van Alstine, is to the effect that they did not see the car nor hear anything indicating its approach, and tends to show that from where they were at the time they could not see up to the switch where it came upon the main track. The testimony on this subject is not entirely clear, but it wholly fails to show that anything was done to warn them or signal the approach of the coach. They started east towards the depot, their backs to the switch, and the plaintiff testifies that he was walking between the two tracks and not between the rails of the main track, and Van Alstine's evidence tends to the same conclusion. The entire evidence on the subject is not so clear and decisive as to justify the court in withdrawing the question whether the plaintiff's negligence contributed to his injury from the jury. "The question of contributory negligence is eminently proper for a jury to determine, and when the evidence does not clearly and indisputably show such negligence or want of care on the part of the plaintiff, so as to leave nothing to submit to the jury on the opposite theory or position, a nonsuit should not be granted." *Houfe v. Fulton,* 29 Wis. 296; *Bessex v. C. & N. W. R. Co.* 45 Wis. 483; *Valin v. M. & N. R. Co.* 82 Wis. 1, 6, and cases cited.

For these reasons the nonsuit was improperly granted.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.

As to negligence in respect to flying switches or detached cars moving by their own momentum, see note to *Kentucky Cent. R. Co. v. Smith,* in 18 L. R. A. 63.— REP.