BAIN, administrator, Appellant, vs. NORTHERN PACIFIC RAILWAY COMPANY, Respondent.

*January 13—February 2, 1904.*

*Railroads: Negligence: Personal injuries: Cause of action, local or transitory? Dangerous place to work: Duty to warn: Court and jury: Fellow servants: Contributory negligence: Assumption of risk.*

1. A cause of action is not changed in character by reason of statutory regulation or modification of the circumstances out of which it would arise at common law, unless such statutes are penal.

2. A cause of action for personal injuries is not local, and the person liable therefor may be pursued in any jurisdiction where he may be found.

3. The mere fact that a cause of action for personal injuries could not exist under the rules of the common law without the aid of the statutes of another state, is no obstacle to recovery thereon in the courts of Wisconsin.

4. The moving of railroad cars by a locomotive on a warehouse track, where the space between the side of an ordinary car and the warehouse is only about fifteen inches, is such dangerous business as to arouse the duty of the railway company to promulgate regulations requiring warning to be given by the employees in charge whenever such cars are to be moved.

5. In such case, where there was some evidence that no regulations requiring notice or warning of the purpose to move cars on the warehouse track had ever been proclaimed by defendant, and that employees in and about the warehouse were likely to be imperiled by a sudden and unannounced movement, it is error to direct a verdict for the defendant.

6. Defendant maintained a track at Duluth, Minnesota, alongside of a warehouse on which plaintiff's intestate was employed as a mason in building part of the wall of the warehouse, the wall being about fifteen inches from the side of an ordinary car standing on such track. When deceased went to work the cars on the track were stationary and not attached to any locomotive, but the cars being suddenly and violently set in motion by defendant's engine, deceased was crushed between the warehouse and a car of more than ordinary width, and killed. There was evidence tending to show that defendant's employee, charged with duty and control of the removal of

these cars, before setting them in motion, passed through the warehouse, spoke to decedent and his helpers, and observed their surroundings. *Held:*

(1) That the jury, if convinced of such facts, might have found defendant's employee guilty of negligence.

(2) That liability for such injury arose from a "risk or hazard peculiar to the operation of railroads," under secs. 2071, 5913, Gen. Stats. Minn. 1894, permitting recovery for injuries resulting from the negligence of fellow servants.

(3) That it was error to direct a verdict for defendant.

7. In such case, on the evidence, it is *held* that the question of decedent's contributory negligence, and whether he assumed the risk, should have been submitted to the jury.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

The defendant maintained at Duluth a covered dock or warehouse extending out easterly into the waters of the bay. Same was about 1,000 feet long east and west, the north side fronting upon a slip in which vessels entered, and along the south side were maintained two-tracks, onto which cars were run for the purpose of delivering freight into the warehouse to be transferred to boats, or receiving freight from the warehouse. The floor of warehouse was about four feet above these tracks, and the same height as car floors. At the time of the events involved it was customary to move such cars in and out seven or eight times a day, at intervals of approximately an hour. The plaintiff's decedent was a mason foreman, and was engaged in the work of building a transverse fire wall across this building at a point about 600 feet east from its shore end. He and his assistants had built that wall up to the level of the floor of the building from the foundation about four feet below, commencing at the north side of the building and working southerly, of course standing in the unbuilt space and working backward. The day before the injury the wall had been completed up to the height of the floor to the extreme south side of the building, except that about two feet of the wall had been built upward to

within only about two feet of the level of the floor, and thence sloped northward perhaps another two feet. Before completing the wall it was necessary to remove a post in the south side of the building at the spot where the wall must cut through. At seven o'clock in the morning of the 29th of April, 1902, the decedent and his assistants proceeded to remove that post and to shore up the roof, whereupon the decedent took his stand outside of the south wall of the building, and proceeded to build up the end of the brick partition wall. At that time there was standing upon the track, whose nearest rail was only about three feet from the south side of the building, a number of freight cars, with no engine attached to the same, such cars having been in place since the night before. The car opposite the end of the partition fire wall was an ordinary freight car, and left a space about fifteen inches between its side and the side of the building in which decedent must stand. While he was thus engaged, and at about half past seven in the morning, an engine was backed down against these cars with much force, and they propelled eastward at a speed variously described as from two to five miles an hour. The second car westward of the deceased was a very much wider car, so that it left a space of only seven to ten inches between it and the building. Decedent was caught by the side of that car, rolled along, and crushed against the side of the building, so that he died shortly afterwards. There was no proof of any regulation promulgated by the defendant for giving notice or warning when cars standing beside this warehouse were to be moved. There was proof that no warning was given on this occasion—such, at least, as could reach the decedent and be of any effect—although the engineer testified that he was sure he rang his bell some 600 or 700 feet away, as he uniformly did. There was evidence that the deceased had been engaged in this work a week or ten days, so that he had opportunity to observe the frequency with which the cars on this track were moved, but

no evidence that he had any knowledge as to either regulation or custom to give warning of such movement. At the close of the trial defendant moved the court to direct a verdict for the defendant "on the ground that the evidence does not show facts sufficient to constitute a cause of action. The evidence shows that the deceased was guilty of contributory negligence, and assumed the risk of the injuries that he was exposed to." The motion was granted, and upon such verdict judgment for the defendant entered, from which the plaintiff brings this appeal.

For the appellant there was a brief by *Luse, Powell & de Forest,* and oral argument by *L. K. Luse.*

For the respondent there was a brief by *Louis Hanitch,* attorney, and *C. W. Bunn* and *Emerson Hadley,* of counsel, and oral argument by *Mr. Hanitch,*

Dodge, J. This cause of action depends for its existence upon statutes of Minnesota, certainly upon sec. 5913, Gen. Stats. Minn. 1894, which covers the same general field, and in general effect is the same as sec. 4255, Stats. 1898, both being in adoption of the English legislation of 1846 known as "Lord Campbell's Act" (9 & 10 Vict. 93) ; the Minnesota statute, however, by construction, conferring the right of recovery although the beneficiary be an alien. *Renlund v. Commodore M. Co.* (Minn.) 93 N. W. 1057. Possibly the right of action also depends on sec. 2701, Gen. Stats. Minn. 1894, imposing liability on railway corporations for injuries to their employees by negligence of a coemployee. This statute in terms imposes liability to any employee injured, without contributory negligence, by the negligence of any coemployee, without limitation as to the character of either the employment or the risk; but in its application it has been construed by the supreme court of Minnesota as imposing such liability only for injuries resulting from exposure to hazards peculiar to the repair and operation of railroads

(*Nichols v. C., M. & St. P. R. Co.* 60 Minn. 319, 62 N. W. 386; *Mikkelson v. Truesdale,* 63 Minn. 137, 65 N. W. 260), so that it corresponds very closely with the provisions, and certainly with the general policy, of ch. 448, Laws of 1903. That causes of action for personal injuries by negligence are transitory, and not local, so that they may be enforced in any *forum* where personal jurisdiction of the parties can be acquired, is elementary, and supported by unanimous consensus of authority. There is, however, some exception to that unanimity where the cause of action results from statutes marking more or less violent departure from the policy of the common law. Still the great weight of authority is in support of the view that the *cause of action is not at all* changed in character by reason of statutory regulation or modification of the circumstances out of which it would arise at common law, so that such statutes are not penal; that, existing a cause of action for personal injuries, the same is not local, and the person liable therefor may be pursued in any jurisdiction where he may be found. *Dennick v. Railroad Co.* 103 U. S. 11; *Texas & P. R. Co. v. Cox,* 145 U. S. 593, 12 Sup. Ct. 905; *Stewart v. B. & O. R. Co.* 168 U. S. 445, 18 Sup. Ct. 105; *Whitman v. Oxford Nat. Bank,* 176 U. S. 559, 20 Sup. Ct. 559; *Leonard v. Columbia S. N. Co.* 84 N. Y. 48; *Wooden v. W. N. Y. & P. R. Co.* 126 N. Y. 10, 26 N. E. 1050; *Higgins v. C. N. E. & W. R. Co.* 155 Mass. 176, 29 N. E. 534; *Walsh v. N. Y. & N. E. R. Co.* 160 Mass. 571, 36 N. E. 584; *Chicago, St. L. & N. O. R. Co. v. Doyle,* 60 Miss. 977; *Missouri P. R. Co. v. Lewis,* 24 Neb. 848, 40 N. W. 401; *Knight v. W. J. R. Co.* 108 Pa. St. 250; *Herrick v. M. & St. L. R. Co.* 31 Minn. 11, 16 N. W. 413; *Nicholas v. B., C. R. & N. R. Co.* 78 Minn. 43, 80 N. W. 776; *Eingartner v. Illinois S. Co.* 94 Wis. 70, 79, 68 N. W. 664; *MacCarthy v. Whitcomb,* 110 Wis. 113, 85 N. W. 707. The cases usually cited as in conflict with the foregoing general rule are *Richardson v. N. Y. C. R. Co.* 98 Mass. 85;

*Woodard v. M. S. & N. I. R. Co.* 10 Ohio St. 121; *McCarthy v. C., R. I. & P. R. Co.* 18 Kan. 46; *Anderson v. M. & St. P. Railway,* 37 Wis. 321. Of these the first three are addressed to the new cause of action in favor of personal representatives of a deceased in trust for certain relatives, created by Lord CAMPBELL's act and its successors in various states. While they suggest doubt as to the transitoriness of a purely statutory cause of action, they turn mainly on the consideration that, in addition to creating a cause of action, such statutes also constitute a trustee to recover upon it, and prescribe his duties as to distribution of its fruits, which it is forcibly argued are allowed extraterritorial effect if an administrator appointed in another state may take and enforce the trust. Later cases in Massachusetts have effectually "trimmed" the *Richardson Case* to that consideration alone. The argument is, we confess, a cogent one, which might well give us pause, especially where the beneficiaries differ under the respective laws of the place of injury and of the *forum.* We have nevertheless concluded that we should yield to the great preponderance against its effectiveness of decisions of the courts of sister states, and also of the supreme court of the United States, to which we have already declared a general policy of adherence in case of conflict between state courts. The remaining case, a decision of our own court, relating to a cause of action under the coemployee statute of Iowa, is so out of harmony with all decided cases in its reasoning, though perhaps not in the result reached, that it demands more than passing mention. That case rests upon the major premise that a personal action for a personal injury is governed by the *lex fori,* and not by the *lex loci,* as to the existence and validity of the right of action. This general proposition is so opposed to most elementary principles of law that we at once turn with interest to the authorities cited to support it, namely, *De la Vega v. Vianna,* 1 Barn. & Ad. 284; *Scoville v. Canfield,* 14 Johns. 338, and *Pearsall v. Dwight,* 2 Mass.

84. We find that they utterly fail to do so, but, on the contrary, contradict it so far as they speak on the subject. In *De la Vega v. Vianna* the question was whether the debtor could be arrested in England under judgment upon a contract made abroad, when the law of the place of contract did not permit such process. The court held he could not escape for that reason; that arrest was only matter of remedy, over which the law of the *forum* controlled, approving impliedly the view that, as to the existence of the right of action, the validity and construction of the contract, the *lex loci* was paramount. *Scoville v. Canfield* held merely that a penal statute could not be enforced by the courts of another state, nor statutes affecting merely the remedy, and not the right. *Pearsall v. Dwight* denied controlling effect to a foreign statute of limitations going only to the remedy, but also declared the elementary rule of law that as to the existence and validity of a personal, transitory right of action, the laws of the place where it arose must be given effect, subject, of course, to the condition that the public policy of the place of suit be not outraged thereby. This rule has the full sanction of this court in *Seamans v. Knapp-Stout & Co. Co.* 89 Wis. 171, 61 N. W. 757; *Bartlett v. Collins,* 109 Wis. 477, 85 N. W. 703; *Brown v. Gales, ante,* p. 349, 97 N. W. 221. The general rule declared in the *Anderson Case* has been repudiated in those last cited, as also in *Eingarlner v. Illinois S. Co.* 94 Wis. 70, 68 N. W. 664, and *MacCarthy v. Whitcomb,* 110 Wis. 113, 85 N. W. 707; in the former in its application to a right of action arising under the rules of merely the common law; in the latter with reference to a right depending on statutes of another state like those existing in Wisconsin. In no other case in this state has the rule stated in *Anderson v. M. & St. P. Railway,* been followed or reaffirmed. We cannot avoid the conclusion that the statement that a personal right of action for a personal injury is governed by the *lex fori,* as applied to anything but the man-

ner of enforcement, was inconsiderately made, and should be corrected, to the end that it may not stand in our Reports in apparent conflict with the law as recognized everywhere else, and as applied by this court in at least tacit repudiation of that statement. That case may doubtless stand as authority for what was in fact decided, namely, that the courts of this state may refuse to enforce even a personal cause of action which depends on the statute of another state radically different from the law in this, and repugnant to our public policy. So restricted, it presents no obstacle to the present action, depending on statutes of Minnesota of which practical counterparts exist here, and which therefore are entirely in accord with the public policy of Wisconsin as declared by its legislature. We conclude, therefore, that the mere fact that the cause of action now sued on could not exist under the rules of the common law without the aid of the Minnesota statutes above cited is not an obstacle to recovery thereon in the courts of this state.

2. The direction of a verdict for defendant might be sustained either if there were no evidence of negligence on the part of defendant or its employees, or if the evidence conclusively showed that plaintiff's decedent was guilty of contributory negligence, either by specific act or by assumption of the risk from which he suffered. Of those in their order. Two phases of negligence on the defendant's part are urged: The first, that of the defendant itself, in that the company had failed to prescribe any regulations requiring such warning to be given before moving cars on these warehouse tracks that employees in peril of injury thereby might have opportunity to escape. There can be no doubt of the duty of a master who conducts a dangerous business by means of numerous employees to promulgate regulations requiring warning to be given of the doing of acts by some likely to injure others in absence of such warning. *Promer v. M., L. S. & W. R. Co.* 90 Wis. 215, 63 N. W. 90; *Portance v. Lehigh*

*Valley C. Co.* 101 Wis. 574, 578, 77 N. W. 875; *Hartvig v. N. P. L. Co.* 19 Oreg. 522, 25 Pac. 358; *Lake Shore & M. S. R. Co. v. Murphy,* 50 Ohio St. 135, 33 N. E. 403; *Ford v. L. S. & M. R. Co.* 124 N. Y 493, 26 N. E. 1101. That the moving of cars by locomotive engines in a yard where others may be endangered thereby is such dangerous business as to arouse this duty could hardly be questioned, but, in any event, is settled by *Promer v. M., L. S. & W. R. Co., supra.* There was at least some evidence in this case that no regulations had ever been proclaimed by defendant requiring notice or warning of the purpose to move cars upon this warehouse track. There was also evidence that employees in and about the warehouse were likely to be imperiled by a sudden and unannounced movement. Such employees were liable at any time to be passing from warehouse to car in their work, or across the track, even between the cars, to reach the accommodations provided for calls of nature. Obviously, too, if any repairs needed to be done to the south side of the warehouse, the workmen must be, as deceased was, between the side of the building and the track. It seems plain, therefore, that the jury might well have been justified in finding that the situation was such as to impose on the company this duty of ordering that warning or notice be given, whenever cars on this track were to be changed from inert structures dangerous to no one into a moving railroad train, and that such duty had not been performed.

The other phase of negligence claimed to make defendant liable is that of the employee charged with the duty and control of the removal of these cars, and who caused the movement which injured the deceased. The evidence as to his conduct is conflicting, but there is testimony tending to prove that he passed through the building from end to end to see that no "toe boards" or skids were in place between the floor of the warehouse and the cars; that he saw and spoke to decedent and his helpers; that at that time one of the gang was

down in the space between building and cars, and that the
shape and condition of the wall was such that any reasonable
man must assume that whoever was going to build up the
south end of it to the same level as the rest would in all
probability stand where did the deceased when hurt. If the
jury were convinced of such facts, we are clear that they
might also have found that this man was negligent in start-
ing the cars rapidly to the eastward without either warning
these masons or assuring himself that they were not in the
place of peril. This, if found, would perhaps have been
merely negligence of a fellow servant of defendant, but,
under the statute of Minnesota above mentioned, would have
resulted in liability if the injury arose "from a risk or haz-
ard peculiar to the operation of railroads." That it did so
arise is obvious. If anything is peculiar to the operation of
railroads, the moving of a train of freight cars is.

3. Thus we are brought to consider the question of con-
tributory negligence, including assumption of the risk from
which the injury resulted. The contention of respondent is
that deceased was guilty of negligence in undertaking to
stand between the building and the track to build up the
south end of this wall, when he might have stood within the
building, and built the south end first, and thence inward.
The evidence can hardly be considered conclusive that this
method was feasible—certainly in the stage and shape which
the wall had reached on the morning in question; but, laying
that doubt to one side, we are clear that it cannot be held
negligence in law to take a position in such proximity to a
stationary and detached freight car that, if it is set in mo-
tion without notice, injury is probable, when one has no
knowledge of any custom to move it without warning. Such
a car presents nothing of peril in its then condition. It is
as harmless as a farm wagon, or, indeed, as a building, *per se.*
*Luebke v. C., M. & St. P. R. Co.* 59 Wis. 127, 17 N. W.
870; *Maguire v. F. R. Co.* 146 Mass. 379, 15 N. E. 904.

If, as the jury might have found, the situation imposed a duty of warning upon the master, the workman may well without negligence assume that such duty will be performed unless he has knowledge of absence of such regulation or of a different custom. There is no direct evidence that deceased had any knowledge either of lack of regulation or of custom to move cars without precaution, by way of warning or otherwise, to prevent injury to those about the warehouse exposed to danger. The utmost extent of proof is that he had been at work for a week or more in or under this warehouse, and might have observed what the custom was. Whether he did so; or, under all the circumstances, must, in the exercise of ordinary care, be presumed to have done so, involves inference by no means so clear and certain as to warrant affirmative answer by the court. The burden of proof was upon the defendant, and we are not prepared to hold that the facts necessary to charge deceased with contributory negligence in placing himself in the place and position of injury are established beyond controversy.

Substantially the same considerations apply to the claimed assumption of the risk. Deceased, of course, assumed the risk resulting from such facts as he knew and such as were obvious to ordinary care and prudence. He undoubtedly assumed any risk from the proximity of the stationary cars, but he did not assume the risk of the cars being set in motion without warning, unless he knew, or ought to have known, there was some likelihood of such event. That he had any such knowledge or means of knowledge was, as already stated, not established beyond controversy.

Respondent further urges that, even after the cars were set in motion, decedent might have escaped from his position and into the building before the wide car reached and crushed him. As to his opportunities and conduct, the evidence is confused. The only feasible means of escape were either stepping up some twenty-two inches onto the wall he

was building and squeezing through a thirteen-inch orifice in the side of the warehouse, or climbing into one of the doorways on either side of him at an elevation of four feet, and this within a space of only thirteen or fifteen inches between the side of the building and the moving freight car. The evidence discloses that he was not directly in front either of the thirteen-inch space or of a door at the moment the cars started, but was reaching over to the right of the former, trowel in hand, for mortar, about three feet away. There is uncertainty in the evidence as to how far away was the wide car, how rapidly the train moved, and how soon deceased was reached and struck by the wide car. One witness is very certain that it was almost momentarily after the shock of the coupling engine, and before decedent had time to straighten up from his reaching after mortar. When the impact of the engine came, and wholly unexpectedly these cars were changed to a moving railway train, so close to the side of the building that only by crowding against it could he avoid contact with the cars, there was obviously such a situation of surprise and sudden peril that one might well be free from imputation of negligence merely because he did not select the best method of escape. *Schultz v. C. & N. W. R. Co.* 44 Wis. 638, 644; *Berg v. Milwaukee,* 83 Wis. 599, 602, 53 N. W. 890. In such state of the evidence the question of decedent's negligence was for the jury.

From all that has preceded, our conclusion is obvious that the circuit court should have submitted to the jury the questions of defendant's negligence and of contributory negligence on the part of plaintiff's decedent, including assumption of the risk, and that error was committed in directing verdict for the defendant.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.