GIERCZAK, Respondent, vs. NORTHWESTERN FUEL COMPANY, Appellant.

*February 23—March 15, 1910.*

(1) *Stay of proceedings: Failure to pay costs: Discretion.* (2–8) *Master and servant: Injuries: Unsafe working place: Assumption of risk: Notice: Negligence of fellow-servant: Instructions to jury.* (9, 10) *Evidence: Witnesses: Cross-examination.*

1. Where, upon a motion to stay proceedings until payment of a judgment for costs rendered against the plaintiff in a previous action for the same injuries which had been voluntarily dismissed by him, it appeared that the dismissal resulted from an unexpected situation developed at the trial and was in good faith and that plaintiff has been and is unable to pay the judgment and support his family, the question was one addressed to the sound discretion of the court, and refusal of the stay was not an abuse of such discretion.

2. An employee does not assume a risk unless he knows it or the circumstances are such that one in the exercise of ordinary care ought to know it.

3. An adult employee of experience and ordinary intelligence who knows or ought to know that a steel rope is likely to fall from a considerable height into his working place, necessarily knows or ought to know the danger of injury therefrom and cannot escape the consequences of such knowledge by claiming that he did not appreciate the danger or the risk.

4. Where a shoveler working in the hold of a vessel from which coal was being unloaded was injured by the fall of a steel rope which regularly fell at a certain stage of the work as the result of a change then made in the hoisting apparatus, and there was evidence that notice of the fall of the rope had always been given on previous occasions so far as he knew, but that it was not given at the time in question, it cannot be said as matter of law that he assumed the risk.

5. Failure, in such case, of the foreman in charge of the unloading operations to give notice or warning of the fall of the rope was not merely negligence of a co-employee, where the employer had not, by rule or otherwise, made any provision for warning being given of the constantly recurring danger.

6. In such a case, where the only negligence consisted in lack of warning, for which no provision had been made, an instruction

that the officers and agents in charge of defendant's business of unloading coal from vessels to docks stood for and represented the defendant, was not erroneous.

7. An instruction that if defendant failed to use such care to provide plaintiff with a safe place to work as the great mass or majority of *employers* under similar circumstances would ordinarily use, then the place furnished was not reasonably safe, was not erroneous in that the word "employers" was used instead of "mankind."

8. It was proper in such case to instruct the jury that, in determining whether defendant furnished a reasonably safe place to work, the jury might consider the opportunity or lack of opportunity to guard and protect men working in the hold of the vessel, the precautions taken in that regard, the nature of the appliances above the hatchway, the manner of making the change in the apparatus, the fact that no rules as to warning the men of the change had been made, and that no warning was in fact given to the plaintiff.

9. How far a party may properly be permitted to cross-examine his own witness when there is manifest reason to be surprised by his testimony (especially if the witness be identified in interest with the adverse party) is a matter largely in the discretion of the court, and that discretion will not be reviewed on appeal except in case of abuse.

10. In an action for injury to one who was struck by a falling steel rope it was not error to permit a dentist who treated plaintiff's broken teeth to state whether it would take a light or heavy blow to leave the mouth in the condition in which he found it, it being undisputed that the blow was a heavy one.

APPEAL from a judgment of the circuit court for Bayfield county: A. H. REID, Judge. *Affirmed.*

Personal injuries. The plaintiff was a man of ordinary intelligence, forty-seven years of age, who at the time of his injury had been employed by the defendant as a coal shoveler at its large coal dock at the city of Washburn for nine years. On the 6th of September, 1907, he was engaged shoveling coal into a large bucket in the hold of a large vessel lying at defendant's coal dock, when the end of a half-inch steel wire rope fell down through the hatchway and struck him in the face, knocking out several teeth and inflicting other injuries. The fall of the rope came about in this way: In order to rap-

idly unload the boat, a long boom extends out from and about thirty-five feet above the dock to a point above the middle of the hatchway of the boat.    On the end of the boom is a pulley or sheave through which the steel rope in question runs to a large drum, which is operated by a hoister in a shanty on the dock.    During the early stages of the unloading of the boat, large clam shells (so called) are attached to the steel rope and lowered into the hold, which automatically load themselves and are drawn up to the end of the boom, and then pulled back by a sort of a carriage running on the boom back into the yard and emptied.    When the coal is nearly gone in the hold, the clam shells are detached because they will no longer load themselves, and large buckets are substituted. This operation takes about half an hour, and in course of it the end of the steel rope has to be drawn through the pulley by men on the dock and always falls down into the hatchway if a boat be at the dock, or into the water if there be no boat there.    At the time of the accident the clam shells had been taken off and the steel rope was being pulled out of the pulley, and in course of this operation the end of it fell down into the hatchway.    No warning was given of its approaching fall.    The foregoing facts are all without dispute.

The jury returned a special verdict finding (1) that the defendant did not furnish the plaintiff with a reasonably safe place to work; (2) that this failure was a proximate cause of plaintiff's injury; (3) that defendant was negligent in failing to warn plaintiff of the expected drop of the rope; (4) that such negligence was a proximate cause of plaintiff's injury; (5) that plaintiff did not know and appreciate, before his injury, the danger to which he was subject by the process of changing from clam shells to buckets; (6) that he could not have known or appreciated such danger before his injury by the exercise of ordinary care; (7) that no want of ordinary care on plaintiff's part proximately contributed to his injury; and (8) that his damages were $1,200.

The defendant moved to reverse the answers to the various

questions and for judgment on the verdict as corrected, also that the verdict be set aside and a new trial granted, but all the motions were denied and judgment rendered on the verdict for the plaintiff, from which judgment defendant appeals.

For the appellant there was a brief by *Solon L. Perrin* and *John Walsh,* and oral argument by *Mr. Perrin.*

For the respondent there were briefs by *Sanborn, Lamoreux & Pray* and *Horace B. Walmsley,* and oral argument by *F. B. Lamoreux.*

WINSLOW, C. J. It appears that the plaintiff brought a previous action for the same injury and voluntarily dismissed the same upon the trial and has never paid the judgment for costs which followed the dismissal. Upon an affidavit showing these facts, the defendant at the opening of the trial of the present action moved that the proceedings herein be stayed till such judgment was paid, but the court overruled the motion. Whether this motion and the order thereon should not have been preserved in the bill of exceptions in order to be reviewed on appeal we do not find it necessary to decide. Even conceding the order to be an intermediate order which may be reviewed without exception under sec. 3070, Stats. (1898), still we cannot say that error was committed in denying the motion, because it appears by supplemental return that upon the hearing of the motion affidavits were presented to the court tending to show that the dismissal of the former action resulted from an unexpected situation developed upon the trial, and was made in good faith and not prompted by any intention to harass the defendant, and, further, that the plaintiff has been and is absolutely unable to pay the former judgment and support the family dependent upon him. Under such circumstances, the question whether the action should be stayed until the costs of the former action be paid was a question addressed to the sound discretion of the court, and we cannot say that any abuse of

discretion appears in the present case. *Odegard v. North Wis. L. Co.* 130 Wis. 659, 110 N. W. 809.

The general contention that a verdict for the defendant should have been directed either because the plaintiff assumed the risk as matter of law, or because the injury was the result of the negligence of a fellow-servant in failing to give plaintiff warning that the rope was about to fall, cannot be sustained. The evidence showed or tended to show that every time the change was made from clam shells to buckets the end of the steel rope necessarily fell into the hold of the ship, a distance of some sixty feet, and that the men who were shoveling in the hold could not ordinarily tell when it was about to fall; that the company had made no rule making it the duty of any person to give notice of the expected fall; that Love, the foreman of the unloading operations, at times did give notice of the fall; and that whenever the plaintiff had seen the line fall before the present occasion the foreman had always given notice. It was undisputed that notice was not given on the present occasion. In this condition of the evidence it cannot be said that the plaintiff assumed the risk, because one must know a risk, or the circumstances must be such that one in the exercise of ordinary care ought to know a risk, before he can assume it. If notice of the fall of the cable had always previously been given so far as plaintiff was informed, and such notice was omitted at the time in question, it cannot be justly said as matter of law that plaintiff either knew or ought to have known of the risk. Nor can Love's failure to give notice be called merely the negligence of a fellow-servant, for the reason that the defendant had utterly failed to promulgate any rule or make any arrangement for the protection of its employees against this serious danger which resulted from this regular and ever recurring fall of the cable. Had it provided for a competent employee to give warning to other employees of this dangerous movement of the cable, it would doubtless not be liable for the

negligent failure of such employee to give the notice or warn-
ing; but where it makes no provision for warning, and the
danger is one which, under the rules of reasonable care, it
should provide against by providing for notice or warning by
a competent person in advance, then the failure of some co-
employee to voluntarily give notice is not negligence of the
co-employee, but negligence of the master. *Portance v. Le-
high Valley C. Co.* 101 Wis. 574, 77 N. W. 875; *Bain v. N.
P. R. Co.* 120 Wis. 412, 98 N. W. 241.

Some detail errors are alleged which will be briefly taken
up. Mr. Love, the foreman of the dock operations, under
whom plaintiff worked and who was still in defendant's em-
ploy, was called as a witness by the plaintiff, and the court
allowed plaintiff's counsel to ask him several questions in the
nature of cross-examination as to his testimony given upon
the trial of the former action. This was objected to, and is
now assigned as error. It appears by examination of the
record that there was certainly fair ground to claim that
plaintiff's counsel were surprised by some variations between
the witness's testimony on this trial and that given on the
former trial. While the general rule is that a party is not
to impeach his own witness, the question as to how far coun-
sel may be properly permitted to go by way of cross-examina-
tion of a witness when counsel manifestly have good reason
to be surprised by his evidence (especially if the witness be
identified in interest with the adverse party) is one resting
largely in the discretion of the trial court, and that discre-
tion will not be reviewed here except in case of abuse.

The dentist who treated the plaintiff and extracted the
roots of the broken teeth was allowed to answer the question
whether it would take a light or heavy blow to leave the mouth
in the condition in which he found it. There was no error
in this. All the evidence shows that the blow was a heavy
one. There was really no dispute about it.

The court instructed the jury that the officers and agents

in charge of the defendant's work and business of unloading coal from vessels to the docks stood for and represented the defendant. This is alleged to be error because it might be inferred therefrom that any man in charge of any part of the work represented the defendant, and that the defendant was liable for his negligence. Had it appeared that the defendant had imposed the duty of warning on Love or some other superior employee, the objection might have weight, for then, doubtless, the inference might be drawn that the negligence of such officer was the negligence of the defendant, when in fact it would be but the negligence of a co-employee; but as it appeared without dispute that the defendant never promulgated a rule requiring warning, and really the only negligence consisted in lack of warning, the instruction could do no injury. The neglect of the officers in charge was the neglect of the defendant itself.

The court charged that if the defendant failed to use such care and caution to provide the plaintiff with a safe place to work as the great mass or majority of *employers* under similar circumstances would ordinarily use, then the place furnished was not reasonably safe. It is contended that the word "mankind" should have been used instead of "employers." The objection is plainly untenable. As employers are the only people out of the great body of mankind who furnish employees places to work, they necessarily are the only people with whose conduct the defendant's conduct can be compared. Where the quality of an act which all mankind performs is under consideration, the test is doubtless that care which the great mass of mankind ordinarily exercises under like circumstances; but, if the act be one which only a part of mankind performs, then the test must be the care which the great mass of people called upon to perform that act ordinarily exercise.

In instructing the jury upon question No. 1 the court told them that they might take into consideration the opportunity or lack of opportunity to guard and protect the men working

in the hold, the precautions taken in that regard, the nature
of the appliances above the hatchway, and the manner of
making the change from clam shells to buckets, the fact that
no rules as to warning the men of the change had been made,
and that no warning was in fact given to the plaintiff.    Va-
rious arguments are advanced to show why these matters were
improper to be considered in deciding whether the place was
reasonably safe or not.    But the arguments do not impress
us as carrying any weight.    It seems to us that the consider-
ations above mentioned were eminently fit to be considered
by the jury.    There are no other errors assigned which are
deemed to require discussion.

While no error is assigned as to the form of questions
Nos. 5 and 6, and therefore no question as to their correctness
is before us, we deem it proper to call attention to the fact
that within the decisions of this court they are inaccurate in
such a case as the present.    This is the case of an experienced
man of ordinary intelligence and brightness.    If he knew or
ought to have known that the steel rope might fall, he neces-
sarily knew or ought to have known all the probable conse-
quences of such fall, for there could be nothing uncertain or
occult as to such consequences.    Under such circumstances
the danger is open and obvious; and when the danger is open
and obvious, free from uncertainty or obscurity, and the
servant of mature years and of ordinary intelligence, he as-
sumes the risk when he knows or ought to know that danger.
There is no room, then, for him to escape the consequences of
his knowledge by claiming that he did not comprehend or ap-
preciate the danger or the risk.    If he knows, he must ap-
preciate.    *Sladky v. Marinette L. Co.* 107 Wis. 250, 83 N.
W. 514.    Where a young and inexperienced employee is in-
jured by some danger of which he has had no instruction or
warning, it is frequently proper to inquire whether he com-
prehended or appreciated the risk, especially if there be ob-
scurity or complexity in the situation, as it may well be that,

while knowing in a general way that there is some danger, he does not appreciate or comprehend its extent or gravity, and so ought not to be held in justice to have assumed the risk. *Chopin v. Badger P. Co.* 83 Wis. 192, 53 N. W. 452; *Wankowski v. Crivitz P. & P. Co.* 137 Wis. 123, 118 N. W. 643.

Attention is called to these two rules in this case, not because there can be any reversal here on account of the erroneous form of the questions, but rather to caution trial courts in the future.

*By the Court.*—Judgment affirmed.