KRACZEK, Respondent, vs. THE FALK COMPANY, Appellant.

*April 5—April 26, 1910.*

*Master and servant: Injury to servant: Negligence of fellow-servant: Assumption of risk: Evidence: Weight: Unsupported verdict: Omitted facts: Appeal: Presumptions.*

1. The positive testimony of two witnesses that the tipping of the heavy cope of a flask in defendant's foundry by which plaintiff was injured was caused by the hook of a chain catching under the flange of the cope is *held* to establish that fact, contrary to a finding of the jury supported only by plaintiff's testimony to the effect that the hook was either hooked in the handle of the cope or caught in the flange, and that he did not know which.

2. That the accident was proximately caused by negligence of a fellow-servant of plaintiff in handling the chain which he had just unhooked from the cope, after the cope had been moved by a crane, is also *held* to be established by the evidence, contrary to a finding of the jury.

3. Where the negligence, if any, of a master which caused injury to a servant consisted in a failure to promulgate a rule requiring a signal to be given before the moving of a crane, in the operation of which the servant was engaged with others, but it appeared that, although the servant knew that the crane was customarily moved without any signal, he had continued in the work without any protest for several months prior to the injury, the servant must be deemed to have assumed the risk of injury resulting from the moving of the crane without signal.

4. The mere fact that the article being handled by the crane at the time of the injury, though of the same sort, was larger and

heavier than those which the servant had before assisted in moving, did not so change the character of his employment that it should be held that he did not assume the risk.

5. Under sec. 2858m, Stats. (Laws of 1907, ch. 346), it will not be assumed in support of a judgment that a fact not found by the jury was found by the trial court, where there is no evidence which would have warranted such a finding.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

Action for damages for personal injury. The plaintiff was employed as a chainman in defendant's foundry, and had been so employed for five or six months before he was injured. There were a number of cranes used in the foundry that were operated by electricity and that ran on tracks above the floor upon which the work of molding was carried on. These cranes were used to convey buckets containing molten metal from one part of the factory to another and to convey the empty buckets after the iron was poured into the molds or flasks, and also to move the "flasks," "copes," and "drags" from place to place. The top part of a mold or flask is called a "cope" and the bottom part the "drag." The hoisting cable was fastened to a stationary shieve at the top and ran through to a lower shieve, which hoisted up and down with the cable. At the bottom of the lower shieve there was a hook to which four chains were attached, each having a hook at the lower end. The copes had four handles attached thereto, into which the hooks were inserted when it was desired to elevate or move them. The crew appears to have consisted of six men: the craneman who operated the crane, the molder, who appears to be the party under whose supervision operations were carried on, and four chainmen, whose work consisted in following the crane and hooking the chains into objects that were to be moved and unhooking the chains when the movement was made. On the day of the accident a large cope twelve feet in length by ten feet in width and weighing about nine tons had been re-

moved from a mold and set upon supports about four or four and one-half feet from the floor. It was not convenient for the plaintiff to handle his chain from the position in which he was when the cope was put in place, and the molder in charge of the work attended to one of the chains in his stead. After the chains were unhooked from the handles the crane-man started to move his crane away and one of the chains caught on the flange of the cope and tipped the same off its support so that it struck the plaintiff and broke both of his legs.

Numerous acts of negligence on the part of the defendant were alleged in the complaint. But one was submitted to the jury for consideration, the court evidently being of the opinion that the evidence did not warrant the submission of any other. Such negligence consisted in the failure of the defendant to promulgate proper rules governing the movement of cranes, to the end that the same might not be moved without some proper signal or warning. The name of the chain-man who had charge of the chain that caused the cope to tip over was George White, and he was stationed at the southwest corner of the cope.

The jury found (1) that the defendant negligently failed to promulgate proper rules and regulations for the operation of the crane, by the movement of which the plaintiff was injured; (2) that the failure to promulgate such rules was the proximate cause of the plaintiff's injury; (3) that the cope was not caused to tip by reason of the hook of the chain at the southwest corner of the cope catching under the upper flange of the cope; (4) that the molder, George White, did not handle his hook in a negligent manner; (5) that the plaintiff was not guilty of contributory negligence; (6) that the plaintiff was damaged in the sum of $5,500. From a judgment entered on such verdict the defendant appeals.

For the appellant there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

For the respondent there was a brief by *W. H. Timlin, Jr.,* attorney, and *Glicksman, Gold & Corrigan,* of counsel, and oral argument by *W. L. Gold* and *Mr. Timlin.*

BARNES, J.   The third and fourth findings made by the jury are contrary to the direct and positive evidence of at least two witnesses and are not supported by any evidence whatever.   It is true that the plaintiff, after testifying two or three times that he did not know whether the hook at the southwest corner of the cope was caught in the handle or whether it had been removed therefrom and caught on the flange of the cope after the crane started to move, did say on redirect examination that the hook was caught in the handle. On recross-examination he explained his apparently inconsistent statements by saying that what he meant was that the hook was either hooked in the handle or caught under the flange, and that he did not know which.   Clearly, this evidence raised no issue as against that of the chainman, George White, who had hold of the chain and who testified positively that the hook had been removed from the handle and tipped the cope over by catching on the flange.   The craneman corroborated White's evidence.   The evidence is just as conclusive that White was negligent in permitting his hook to come in contact with the flange.   The only duty the chainman had was to follow the crane and hook the chains into objects that were to be moved, and unhook them when the movement was made.   In reference to this matter the plaintiff testified:

"The chainman's duties consist in making hitches for the crane; that is, in hitching the hooks of these four chains or any other chains that the crane carried, and unhitching. That is substantially all the chainman has to do; that is what is called in the foundry to follow the crane.   And that was my work. . . . I knew, and everybody else knew, the chains had got to be kept away or held away from the cope when the ‡cope [crane?] was moved. . . . If the hooks were not held away from the cope they would come right down against it—

of their own weight because they hung in the middle over it. . . . In handling those heavy copes and flasks it was part of the duty of the chainmen, of whom I was one, when the hooks were unhooked from the flask, to hold them away, and keep them away until the crane lifted them above the thing that was to be lifted or had been lifted. That is one thing the chainmen are for. . . . I knew enough to keep the chain away from anything. I knew, and any man who had experience in the handling of those molds knew, that it was the business and duty of the men that unhitched the chains to keep them away from the cope, if it was a cope, until the hoist had cleared the weight. . . . It was the business of the chainman or anybody that was acting as chainman, in unhooking that cope or any similar weight that was lifted up, to hold the chains away until the crane would move clear. . . . A man could not very well work there without knowing that. . . . It was done every day a good many times."

George White, the chainman, whose chain caught in the flange of the cope and tipped it over, had been working in the foundry about five months before the accident happened, and testified substantially to the same effect although not with so much detail. No reason is given or shown why he did not perform his duty and keep the hook away from the cope until it cleared the flange. There is no evidence in the case that either qualifies or contradicts that detailed. The chainman White was a fellow-servant of the plaintiff. That the cause of the overturning of the cope was the negligence of White would seem to be conclusively established. That such negligence was the proximate cause of the injury would also seem to follow as a necessary legal inference.

But there is another conclusive reason why plaintiff cannot recover. He had worked in the foundry five or six months before the accident happened. The negligence which the jury found was imputable to the defendant was its failure to promulgate proper rules and regulations for the operation of the crane. The testimony to support this finding tended to show that it was the defendant's duty to promulgate a rule requiring a signal to be given before the crane was moved.

The plaintiff, according to his own evidence, knew that the crane was customarily moved without any signal. After testifying that he did not see or hear any one around the cope give a signal to the craneman on the morning of the accident, he said:

"So far as I know, there never was any signal given to him at all. I did not know of any rules in that shop. It looked strange that no signals were given. I thought so at the time. The reason I didn't say something about it was because they been always doing that, and it would not do me any good to make a complaint about it—one man. . . . They may have given signals to the craneman, but not that I saw. So that all the time I was there I never saw a molder give a signal to the craneman. That is true. I didn't hear a molder give a signal to the craneman about moving the crane. The molder did once in a while give a signal to the craneman—once in a great while. I heard it, but I don't know of any signals to be given. Once in a while I heard the molders signal to the craneman how to move. I don't know how many times in the six months. Sometimes when I was there I did not hear a signal for a day or two. I don't know how many times during the six months that I saw or heard a molder signal to the craneman what to do. Maybe a thousand times—for all my part it could be more, but not that I would know. Some days I seen them, and maybe I heard them, and some days I did not see any signals in there at all. Some days I worked all day and never heard or saw a molder give a signal to the craneman."

It would appear from this testimony that the plaintiff knew that, customarily, signals were not given, and that, with knowledge of this fact, he worked for several months without any protest. If the hazard of moving the crane without signals was one which he could assume, it seems clear that he did assume it, and that such a hazard may be assumed hardly admits of doubt. *Portance v. Lehigh Valley C. Co.* 101 Wis. 574, 581, 77 N. W. 875; *Bain v. N. P. R. Co.* 120 Wis. 412, 422, 98 N. W. 241; *Gierczak v. Northwestern F. Co., ante,* p. 207, 125 N. W. 436.

Counsel for the respondent seek to avoid such a conclusion

by asserting that the character of the work that was being done when the accident happened was different from that at which the plaintiff had been employed before, and that therefore it should not be held that he assumed the hazard to which he was subjected on this particular occasion. In reference to this matter the plaintiff gave the only testimony that was offered. He said:

"Most of the time I had been there I had been a chainman following the crane. That was about six months. I had seen handled copes like these or parts of heavy glass hundreds of times during that six months, and have taken part in it as a chainman a good many times—almost daily. . . . I did not work around large molds like the one we are talking about. That is when I was working on little stuff. As much as I remember, that was the only time that I ever handled a big mold like that—a big cope—otherwise I always handled more small stuff. I never worked around a big cope before in that shop. Before that day the largest cope or flask that was lifted that I worked upon as a chainman was maybe three feet wide or four feet long or so. That was lifted by the crane. I was not there when there was a big cope lifted. I say I never was near a big cope like that. I was always in the place where it was poured off. When I was acting as a chainman it was only for the purpose of hitching and unhitching chains. When I hitched or unhitched a chain on a flask or cope it was for the purpose of raising or lowering it. I have done that before the day I was hurt in that foundry. I had done it a great many times, hitched on the chains to copes or parts of flasks for the crane to lift. I hadn't done chain work before with the molds. That was the first time I ever acted as a chainman on a mold."

The sum and substance of this testimony is that, while he had assisted in the operation of moving copes by means of a crane a great many times, he had never before assisted in moving a cope as large as the one in question. There is no intimation that the movement was conducted in any different manner, or that there was any more danger to be apprehended from moving the large cope than there would be in

moving a smaller one, except that if the large cope were tipped over its weight in falling would be greater than a smaller one and therefore it might produce a more serious injury. But plaintiff had assisted in handling copes three feet wide and four feet long, or such a matter, that were moved by the traveling cranes. It is manifest that the result of tipping such a cope or mold on an employee would be serious, and that the mere fact that the one which was being handled at the time of the accident was larger and heavier than those at which the plaintiff had usually worked did not materially change his situation.

It is suggested that there was evidence tending to show that the crane was not only operated by an unskilled workman, but also by one whose sight was defective, and that we must assume, in support of the judgment, that the court found the defendant negligent in permitting one of its cranes to be operated by such an employee, and also that such negligence was the proximate cause of the injury. Sec. 2858$m$, Stats. (Laws of 1907, ch. 346). An examination of the record convinces us that the evidence fails to show that the defendant was negligent in this regard, and we entertain no doubt that the reason the court did not submit a question to the jury covering such alleged negligence was because it was satisfied that there was no evidence in the case warranting such a submission.

It is unnecessary to consider the other errors assigned. The court should have granted the motion of the defendant to change the answer to certain questions in the special verdict and for judgment on the verdict as corrected.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the complaint.

TIMLIN, J., took no part.